127 So.2d 98 (1961)
TRUSTEES OF the INTERNAL IMPROVEMENT FUND of the State of Florida, Petitioners,
v.
O.H. LOBEAN, a/k/a O.H. LoBean, Respondent.
Supreme Court of Florida.
January 18, 1961.
Rehearing Denied February 17, 1961.
*100 Richard W. Ervin, Atty. Gen., Ralph M. McLane and Irving W. Wheeler, Asst. Attys. Gen., for petitioners.
Allen & Knudsen, Fort Myers, for respondent.
PER CURIAM.
March 27, 1946, the State of Florida through its agent, the Trustees of the Internal Improvement Fund, hereinafter referred to as Trustees, conveyed by Murphy Act deed to O.H. Lobean Government Lot 1, Section 11, Township 43 South, Range 20 East, for which a consideration of $23.50 was paid.
Pursuant to § 253.12, Florida Statutes 1955, as amended by Chapter 57-362, Acts of 1957, F.S.A., the Trustees in 1956 proposed to sell certain submerged, sometimes called sovereignty, lands in Gasparilla Sound, including Government Lot 1, Section 11, Township 43 South, Range 20 East, previously conveyed to respondent by Murphy Act deed as previously stated. Respondent objected to the sale but his objections were overruled. Suit was timely instituted in the Circuit Court of Leon County to enjoin petitioners from concluding the sale of any submerged lands including Government Lot 1 as above described. Petitioners answered, admitting the issuance of a Murphy Act deed to respondent describing Lot 1, as stated, but alleged that at the time the said deed was executed, the lands described therein were sovereignty lands and had remained such, title to which was vested in petitioners who offered to make restitution of the sum or sums paid for the Murphy Act deed.
Respondent moved for summary decree and petitioners cross-motioned for summary decree. The chancellor granted the cross-motion and entered a final decree in favor of petitioners, the result of which was to invalidate respondent's Murphy Act deed because of void assessments of taxes on submerged lands which were not subject to taxation. The chancellor further found that there was no basis for estoppel against petitioners.
On appeal to the First District Court of Appeal the decree of the chancellor was reversed, the court holding that a legal estoppel or estoppel by deed operated against petitioners, relying on Daniell v. Sherrill, Fla. 1950, 48 So.2d 736, 23 A.L.R.2d 1410, although, said the court, the Murphy Act deed was void because the land it described was not subject to taxation account of its submerged character. We are confronted with an appeal by certiorari to review the judgment of the District Court of Appeal, First District.
The first question challenges the judgment of the First District Court of Appeal, holding that legal estoppel or estoppel by deed operated against petitioners, the petitioners contending that estoppel against the state or the sovereign must be sustained on the basis of exceptional and special circumstances which constitute the elements of equitable estoppel.
The parties agree that in order to invoke the jurisdiction of this court under Section 4(2), Article V of the Constitution, F.S.A., antagonistic principles of law must *101 have been announced in a case or cases by the lower court based on practically the same facts. The conflict must be obvious and patently reflected in the decisions relied on. The conflict must result from an application of law to facts which are in essence on all fours, without any issue as to the quantum and character of proof.
Petitioners contend that the facts in the case at bar and in Adams v. Crews, Fla. App. 1958, 105 So.2d 584, District Court of Appeal, Second District, fall within the criteria set out in the preceding paragraph and are sufficient to invoke the jurisdiction of this court. It is shown that Adams and LoBean both received Murphy Act deeds to submerged lands; both deeds were void as the property was not subject to taxation; each claimed the property by mesne conveyances for more than ten years under a void deed; Adams commenced improvement in addition to paying taxes on his; LoBean paid taxes; neither could have been in actual possession because of the submerged character of the land; the Trustees subsequently rejected the validity of both Murphy Act deeds; Adams and LoBean both plead an estoppel against the grantors. The District Court of Appeal, Second District, struck the answer of Adams which alleged an estoppel against the Trustees, whereas the District Court of Appeal, First District, held the Trustees estopped to deny LoBean's title. The First District Court ignored the early conflicting Adams case, though it was relied on by petitioners because of striking similarity in factual background.
In LoBean case the chancellor held the doctrine of estoppel as established in Daniell v. Sherrill, supra, and other cases inapplicable on the facts presented. Upon appeal, the District Court of Appeal, First District, held the state estopped under the authority of Daniell v. Sherrill, supra. In Adams v. Crews, supra, the District Court of Appeal, Second District, had previously refused to apply the doctrine of estoppel to the facts of that case. Hence, say petitioners, a direct conflict between the decisions of two district courts of appeal on the same point of law on very similar state of facts.
Respondent denies the contention of petitioners and says there is no conflict between the decision arrived at in the instant case by the District Court of Appeal, First District, and other cases relied on by petitioners. Respondent further contends that the decision reached in the instant case is definitely in harmony with the clear line of authority established in Daniell v. Sherrill, supra; Trustees of the Internal Improvement Fund v. Claughton, Fla. 1956, 86 So.2d 775; and Trustees of the Internal Improvement Fund v. Bass, Fla. 1953, 67 So.2d 433.
It is true that there are parallel factual complexes in the case at bar and in Adams v. Crews, supra, but there are some striking differences. What these differences made in litigating these cases is not necessary to discuss, but the difference in holding of the District Court of Appeal in the First and Second Districts as to estoppel against the state is unclear, if not in conflict. Then the difference in the holding of the chancellor in the LoBean case as to doctrine of estoppel as pronounced in Daniell v. Sherrill, supra, and that of the District Court of Appeal, First District, as to the same doctrine in the same case is not only confusing but in conflict. It may be that as to these opinions it is more accurate to say that they are confusing than it is to say they are in conflict. Nevertheless we find them to be in direct conflict, giving us jurisdiction of the cause.
On the merits it is first contended that the doctrine of estoppel can be successfully raised against the state only on the basis of special and exceptional circumstances which constitute the elements of equitable estoppel.
In Trustees of the Internal Improvement Fund v. Claughton, supra, this court held that the doctrine of estoppel is not applied against the state or its subdivisions as freely as against individuals, but it may be invoked even against exercise of *102 governmental powers where it is necessary to prevent manifest injustice and wrongs to private individuals, provided that the restraint placed upon a governmental body to accomplish such purpose does not interfere with exercise of governmental power.
Legal estoppel or estoppel by deed is defined as a bar which precludes a party to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted therein. In other words, legal estoppel contemplates that if I execute a deed purporting to convey an estate or land which I do not own or one that is larger than I own and I later acquire such estate or land, then the subsequently acquired land or estate will by estoppel pass to my grantee.
Legal estoppel or estoppel by deed is determined by the intention of the parties as expressed in the deed, whether or not legal estoppel may be applied in a given case is dependent entirely on the language used in the deed or which appears on the face of the instrument.
Equitable estoppel as applied to land titles is a different thing. It depends on the conduct of the parties for its efficacy. It is not concerned with the language of the instrument and may actually deny the legal effect of the deed. In Florida Land Investment Co. v. Williams, 1928, 98 Fla. 1258, 116 So. 642, 643, this court said:
"An equitable estoppel, as affecting land titles, is a doctrine by which a party is prevented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience."
This jurisdiction has frequently applied the doctrine of legal and equitable estoppel in transactions between individuals. Reid v. Barry, 1927, 93 Fla. 849, 112 So. 846; Murray v. Newsom, 1933, 111 Fla. 193, 149 So. 387; Tucker v. Cole, 1941, 148 Fla. 214, 3 So.2d 875; Neal v. Gregory, 1882, 19 Fla. 356; New York Life Ins. Co. v. Oates, 1939, 141 Fla. 164, 192 So. 637. We have also applied the doctrine of equitable estoppel to transactions between individuals and the state. Gay v. Inter-County Tel. & Tel. Co., Fla. 1952, 60 So.2d 22; City of Winter Haven v. State, 1936, 125 Fla. 392, 170 So. 100; Trustees of the Internal Improvement Fund v. Claughton, supra; Daniell v. Sherrill, supra; Florida Livestock Board v. Gladden, Fla. 1954, 76 So.2d 291. Some jurisdictions decline to apply the doctrine of legal estoppel against the state. St. Louis Refrigerator & Wooden Gutter Co. v. Langley, 1898, 66 Ark. 48, 51 S.W. 68; Elmondorff v. Carmichael, Ky. 1823, 3 Litt. 472, 14 Am.Dec. 86; Taylor v. Shufford, 1825, 11 N.C. 116, 4 Hawks 116, 15 Am.Dec. 512. See also United States v. Stinson, 7 Cir.1903, 125 F. 907, affirmed 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724; State of Iowa v. Carr, 8 Cir., 1911, 191 F. 257.
Petitioners' primary contention here is that this court has not, and should not, in law or logic, permit the doctrine of legal estoppel to be raised against the state.
Petitioners insist that except for terminology in Daniell v. Sherrill, supra, they find no decision of this court which turns solely on the application of legal estoppel against the State of Florida. Petitioners further contend that if and when legal estoppel was otherwise approved it was under mistaken authority and that later decisions have applied only the doctrine of equitable estoppel under like circumstances. After holding in Daniell v. Sherrill, supra, that legal estoppel operated because of the language used in the void tax deed, the court then held that equitable estoppel applied because of the state's conduct in acquiescing in the possession and improvement of the property for more than *103 fifty years, the assessment and payment of taxes on the property, improvements made thereon and the state's failure to refund or offer to refund the taxes paid, though it had surrendered jurisdiction of the property to the United States. Petitioners do not deny that these facts establish equitable estoppel but they say that semantic approval of "legal estoppel has not been adhered to by the court and that this court should now expressly modify or explain Daniell v. Sherrill to accord with later and more logical pronouncements."
In support of this contention, petitioners say that United States v. Stinson and State of Iowa v. Carr, supra, the two cases relied on in Daniell v. Sherrill, supra, as authority for the doctrine of legal estoppel, were both decided on the doctrine of equitable estoppel. It is also pointed out that Reid v. Barry, supra, and Campbell v. Carruth, 1893, 32 Fla. 264, 13 So. 432, were concerned with the doctrine of legal estoppel as applied to individuals, which is entirely different from legal estoppel as applied to transactions between parties and as applied to transactions with the State.
In response to the suggestion that we substituted "semantic approval of legal estoppel" in Daniell v. Sherrill, it is enough to say that semantics is insinuating itself into many controversies that never knew the doctrine until recently. We twist words to emphasize our objective, to glorify our purpose or to condemn that of our opponent, but it had not occurred to us that we were enthroning semantics or dethroning law to determine the doctrine of estoppel. It seems to us that in Daniell v. Sherrill petitioners mistakenly attach the name semantics to a set of general principles having to do with recitals in deeds, or other instruments that are binding on the grantor and estop him from denying them in the future.
We do not see that this holding requires further explanation as such a situation could arise in other cases; neither can we see that it militates against the doctrine contended for by petitioners that when one raises estoppel against the state he must show exceptional or special circumstances and some positive act on the part of a state officer or officers to support it. Gay v. Inter-City Tel. & Tel. Co., supra; Trustees of the Internal Improvement Fund v. Claughton, supra, and Trustees of the Internal Improvement Fund v. Bass, supra.
It is next contended that the application of the doctrine of legal estoppel against the state, if adopted in Florida, is not applicable to all conveyances by the Trustees, regardless of the different capacities in which the Trustees hold various state lands.
It is admitted that the lands conveyed to respondent, the subject of this litigation, were submerged lands, below mean high-water mark, that they were subject to sale by the Trustees, that they were sometimes called sovereignty lands and could be sold subject to the trust defined in the act, § 253.12, Florida Statutes 1957, F.S.A. The authority of the Trustees to sell said lands is at all times subject to the various trusts named in the act.
It appears that the lands in question were acquired by Murphy Act deed, Chapter 18296, Acts of 1937, F.S.A. § 192.35 et seq. Said lands were held under a different trust from that under which sovereignty lands are held. The purpose of the Murphy Act was to restore lands to the tax rolls, title to which had reverted to the state under the Act with power of the Trustees to sell them as provided by law.
The power of the Trustees as to sale and disposition of Murphy Act lands under Chapter 18296, Acts of 1937, and as to submerged lands under § 253.12, Florida Statutes 1957, F.S.A., involve separate and distinct trusts and powers conferred at different times and for different purposes. State ex rel. Town of Crescent *104 City v. Holland, 151 Fla. 806, 10 So.2d 577 (1942).
It is quite true that in Gay v. Inter-City Tel. & Tel. Co., supra; Trustees of the Internal Improvement Fund v. Claughton, supra; Trustees of the Internal Improvement Fund v. Bass, supra, and perhaps others, we recognized the doctrine contended for by petitioners that when one raises equitable estoppel against the state, he must support it by special and exceptional circumstances. We do not find that we have defined what constitutes "special and exceptional circumstances," but we have examined carefully the circumstances relied on by petitioners and we question their sufficiency to negate legal estoppel against the state.
For the reasons so stated, the writ should be, and is hereby, discharged.
THOMAS, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.
DREW, J., concurs specially with opinion.
DREW, Justice (concurring specially).
I concur in the foregoing opinion but would add these observations. In the dim, distant past, when the State and its subdivisions were concerned almost exclusively with the business of government, the argument advanced here that the doctrine of legal estoppel is not applicable to the State would have been sound. In this age, however, when the sovereign is engaged in almost every business activity known, from selling aspirin to operating vast industrial complexes, such argument falls by its own weight. The doctrine is, of course, not available when its application would affect the sovereign power of the State in the exercise of purely governmental functions. But when the State is engaged in the business of selling land or operating beyond its governmental area, I can see no reason to exempt it from the same rules and regulations that the State itself imposes on its citizens. Under the circumstances presented by this record, a private citizen would have been estopped. I can think of no reason why the State should not be held to the same degree of conduct.
THOMAS, C.J., and TERRELL, HOBSON and O'CONNELL, JJ., concur.