## HILLSBOROUGH COUNTY v. DANA, et al.

No. 36402-L.

Circuit Court, Hillsborough County.

September 10, 1962.

William C. McLean, Jr., Tampa, for petitioner.

Byrne Litschgi, Norman S. Brown and John M. Allison, all of Tampa, for defendant Hillsborough County Port Authority.

Raymond Sheldon and E. W. Borden, Jr., both of Tampa, for defendants E. B. Evans and Bonnie K. Evans.

JOHN G. HODGES, Circuit Judge.

*Opinion, including findings of fact, conclusions of law and final judgment:* This cause comes before the court as an action to condemn certain property, which property is to be used for the construction and maintenance of a state highway. While there are several defendants, those pertinent to the issues at hand are defendants E. B. Evans and Bonnie K. Evans, his wife, and the Hillsborough County Port Authority, a body politic and corporate created under the laws of this state, which was added as a party defendant by the petitioner subsequent to the filing of the petition in eminent domain.

The specific matter before the court concerns the motion of the Evans defendants to dismiss the defendant port authority from these proceedings on grounds that the port authority has no right, title or interest in the land in question. The Evans defendants were the record title holders of two parcels of realty, i.e., parcel no. 14 and parcel no. 56, both of which were sought by the county in this proceeding for use in construction of a state road. The

defendant port authority, in its answer to the county's amended petition to condemn these parcels, claimed title to that portion of the parcels which are submerged or sovereignty lands.

As to both parcels, there are two questions to be determined in this proceeding — (1) What part of the land was submerged or emerged land in 1888 and in 1960 at the time of the taking involved, and (2) as to the submerged land, which of the parties defendant was the legal title holder and actual fee simple owner at the time of the taking?

The question was raised during these proceedings as to whether the port authority was a proper party defendant to this action. The Hillsborough County Port Authority was created by the legislature of the state of Florida by chapter 23338 of the Laws of Florida, Acts of 1945, under which it was granted title to all of the submerged lands lying within the boundaries of the port district described in the act. The Fish Creek tract, including both parcels no. 14 and 56, lies within the port district and title to that part of the Fish Creek tract, which is submerged land, is claimed by the port authority under the described legislative enactment. This court sitting in banc by final decree dated July 23, 1956, in Hillsborough County Port Authority v. Trustees of the Internal Improvement Fund, chancery no. 103251-C, confirmed in the port authority title to the submerged lands within the port district. This court finds, therefore, that the port authority, as title holder to the submerged lands in the port district, pursuant to the legislative provision and the cited decision of this court sitting in banc, supra, is a proper party defendant in this action.

Counsel for petitioner Hillsborough County, the Evans defendants, and the defendant port authority, have been vigorous in the factual development of this cause and in the presentation of the principles of law applicable to the issues raised. The extensive evidence presented as to the character of the land involved has covered all the details of its topography and the court has actually viewed the said lands.

From the evidence presented, both documentary and by way of copious testimony by witnesses, the stipulations entered herein by the parties, and the court's view of the premises, the court finds the controlling facts as hereinafter set forth.

Parcel no. 14, taken in the condemnation proceeding for the road right-of-way, is made up of 6.58 acres in the northeast portion of the Fish Creek tract, which embraces approximately 30.07 acres. Parcel no. 56, the so-called drainage easement, is com-

posed of 2.32 acres toward the southern end of the Fish Creek tract.

The Fish Creek tract is an area which was embraced within government lot 2 in a survey made by the United States in the early 1850's. This tract has running through its center area Fish Creek, which is navigable to small motorized craft, and enters Old Tampa Bay. Adjoining the creek on both sides throughout its length and involving both parcel no. 14 and parcel no. 56 are areas covered by mangroves, saw grass and other types of vegetation which grow only on land that is subject to the ebb and flow of the tide, being covered by salt water at some time during the daily tidal cycle.

Portions of parcel no. 14, which portions, together with the bed of Fish Creek, the parties have stipulated as comprising approximately 5.17 acres of the total 6.58 acres, and all of parcel no. 56, are land of this submerged character and subject to the ebb and flow of the tides.

There has been no substantial change in the location of the high water mark as to the lands in question between the date of the original United States Government survey and the time of this proceeding. The earliest United States Government survey was dated 1852.

It is the conclusion of the court that 5.17 acres of parcel no. 14 and all of the acreage contained in parcel no. 56, both at the time of the taking and at the time of the conveyance in 1888 to the Evans defendants' predecessors in title, were submerged or tide land, that is to say, land covered by waters of Old Tampa Bay and subject to the ebb and flow of normal tides, and that the portions which composed the bed of Fish Creek were lands covered by navigable waters.

The Evans defendants purportedly deraigned title to all of the Fish Creek tract to which they claim ownership from the trustees of the internal improvement fund, hereinafter called the trustees, by deed dated June 28, 1888, which conveyed government lot 2, including the Fish Creek tract, to the South Florida Railroad Company, and thereafter from the railroad company through successive grantees to the Evans defendants.

While probative evidence was not offered as to the payment of taxes by the Evans defendants and their predecessors in title upon the Fish Creek tract or the basis on which the property was evaluated for tax assessment, the court assumes that the Evans defendants and their predecessors have paid whatever state and county taxes may have been assessed against the tract during the period of the claimed ownership.

The Evans defendants suggested that the deed to their predecessors in interest by the trustees was executed under their authority to convey swamp and overflowed lands, the title to which had been derived by the state of Florida pursuant to an Act of Congress dated September 28, 1850, c. 84, 9 Stat. 519. While this question may not have been properly developed by the pleadings in these proceedings, the court believes it should nevertheless be dealt with here.

Under the aforementioned Act of Congress, the United States of America granted to Florida, as well as other states, certain lands known as *"swamp and overflowed lands"* in order to enable the state to provide for the construction of levees and drainage necessary to reclaim such swamp and overflowed lands for use in husbandry. Under provisions of this act, the Secretary of the Interior was charged with the responsibility of having the lands surveyed and lists prepared showing what sections were predominantly swamp and overflowed lands. Upon completion of the survey and preparation of lists describing such lands, the Governor of Florida could request a patent of these lands from the United States.

Swamp and overflowed lands do not cover or include tide land or lands under navigable waters, including the shores or spaces between ordinary high and low water marks in the state. Overflowed lands are those that are covered by non-navigable waters subject to such periodic or frequent overflows of water, not including lands between ordinary high and low water marks of navigable waters, as to require drainage or levees or embankments to keep out the waters, and thereby render the land suitable for successful cultivation. (State, ex rel. Ellis v. Gerbing, infra.) Swamp lands are such as are susceptible of and require drainage to dispose of needless water or moisture on or in said lands to make them fit for useful cultivation. The navigable waters in the state and the lands under such waters, including the spaces between ordinary high and low water marks, are the property of the state or of the people of the state in their united or sovereign capacity. Such lands are held for the use of all of the people of the state.

It is the court's opinion that, by definition, swamp and overflowed lands could not include sovereignty or submerged lands since title to such sovereignty or submerged lands did not, as to the state of Florida, rest in the United States in 1850. Title to such sovereignty or submerged lands was vested in the state of Florida in 1845 by virtue of its admission to the union. Consequently, any patent of swamp and overflowed lands by the United States to the state of Florida pursuant to the 1850 Act of Con-

gress could not convey title to any sovereignty lands. (State, ex rel. Ellis v. Gerbing, 1908, 56 Fla. 603, 47 So. 353).

In 1855, the Florida legislature designated certain officials of the state cabinet as trustees of the internal improvement fund. The principal function of the trustees at that time was to take over the responsibility of surveying the swamp and overflowed lands since the United States, through the Secretary of the Interior, had not completed such survey. The trustees were charged with the responsibility of selling these swamp and overflowed lands after having obtained a patent on such lands and then utilizing the funds from such sales for the drainage and construction of levees in the swamp and overflowed areas.

While the Evans defendants claim their title arises from a conveyance by the trustees of swamp and overflowed lands, the evidence has established and the court has concluded that 5.17 acres of the total 6.58 acres in parcel no. 14 and all of the acreage in parcel no. 56, the drainage easement, both at the time of the taking and at the time of the trustees' deed in 1888, was submerged or tide land — that is to say, land covered by waters of Old Tampa Bay and subject to the ebb and flow of normal tides, and that the portions which composed the bed of Fish Creek were lands covered by navigable waters. All of this submerged or tide land, consequently, was sovereignty land, title to which was vested in the state of Florida in 1845 upon its admission to the union, which was deeded to the Hillsborough County Port Authority by the legislature, as hereinabove set forth.

Since any swamp and overflowed lands or other lands conveyed by the trustees as government lot 2 could not contain the sovereignty lands heretofore described, the Evans defendants' predecessors in interest never had title to the latter — the trustees had no power to convey them at the time of the original conveyance.

While the question of the possible application of estoppel, legal or equitable, to the defendant port authority was likewise not raised in the pleadings, portions of several hearings bearing on this matter were devoted to the question. Recent cases such as Trustees of Internal Improvement Fund v. Lobean, 127 So.2d 98; Daniell v. Sherill, 48 So.2d 736; and City of Tarpon Springs v. Koch, 142 So.2d 763, have applied the doctrine of legal estoppel to a governmental body, indicating also that equitable estoppel might be applied, and the Evans defendants contend that such doctrine, or the doctrine of equitable estoppel, should be applied in this case.

It is the court's opinion that the doctrine of legal estoppel, or estoppel by deed, as rather simply and clearly enunciated and rigorously applied in the Lobean and other cases mentioned, should not be applied in this case to defeat the interest of the public in the lands in question, for several reasons.

In the cases where the doctrine has been applied against the state or one of its constituent parts, the governmental body against which the estoppel was invoked was the grantor making the original conveyance of lands which were legally subject to the conveyance at the time it was made. That an estoppel cannot operate to confer authority or power lacking in the grantor appears to be well settled by the authorities. In the instant case, the trustees, the governmental body making the deed of conveyance to the Evans defendants' predecessors in title, had no power or authority to convey title to sovereignty lands at the time the deed was executed. Thus, a county is not estopped to deny the validity of a contract which was beyond the powers of the county to execute, even though the contract may be beneficial to the county (19 Am. Jur., Para. 167), because the contractor should, at his peril, know the authority of those who seem to act for the public body. The designation of the property involved as swamp and overflowed lands by the original surveyors did in no way change their character as sovereignty lands any more than a finding by said surveyors that Fish Creek or the Hillsborough River are non-navigable streams would have made that erroneous conclusion true. A state or its agency should not be estopped to deny the validity of a contract made without authority or by mistakes of its agents or the agents of others, even where the contractor has paid consideration or performed services under the contract for the state's benefit.

In each of the Lobean and other cases applying estoppel by deed in similar cases, the sovereign at the time of the transfer against which the estoppel was applied could have effectively made a transfer through the agency or official executing the conveyance even though the deed involved was void or voidable because of defects, non-performance of conditions or for some other reason. In the Lobean and Daniell cases the trustees, against whose deeds the estoppels were applied, had the power and authority to convey but under different trusts when they executed the estopped instruments. They issued tax deeds which were invalid because of illegal assessments against the lands involved, but the trustees had the power to sell them under different statutes.

The question of legal estoppel, as applied to the trustees' deed, is really academic because the defendant port authority does not

deny the instrument or its recitals but, indeed, gainsays its conveyance, and the parties' intention of conveyance, of submerged or sovereignty lands.

This stronger reason for the non-application of legal estoppel in this case penetrates the very nature of the doctrine. As stated in the Lobean case, legal estoppel or estoppel by deed is — "determined by the *intention of the parties as expressed in the deed. Whether or not legal estoppel may be applied in a given case is dependent entirely upon the language used in the deed or which appears on the face of the instrument.*" This proposition appears to be too well established to bear discussion. Also free from uncertainty is the theorem that all parties to a deed and those claiming under them are bound by the recitals of the instrument and that a recital in the deed, which does not amount to a precise affirmation of a fact, will not estop the parties concerned to deny the fact. Authorities have expressed the theorem in another way by stating that the recitals must be free from ambiguity and uncertainty in every respect to invoke the doctrine of legal estoppel.

The conveyance from the trustees to the South Florida Railroad Company of the tract embracing the land in question was by fee simple deed under an act of the Florida legislature wherein the trustees were ordered to convey, upon completion of construction of each six miles of railroad track, to the railroad company certain swamp and overflowed land adjacent to the line of the railroad. (Chapter 3166, Laws of Florida, of 1879, the amendment referred to in the legislative reference contained in the previously described deed to the railroad company.) This act amended chapter 1987, Laws of Florida, approved February 19, 1874, providing for the creation of railroad and canal companies and specifying their powers to construct and operate railroads and canals. The transfer by the trustees of the sections of land were authorized for the chartering of companies to build transportation facilities for use by the public in the development of the state. These swamp and overflowed land transfers were grants to the railroad for which no payment was required. It might be said that the trustees were performing a governmental function in carrying out this policy of promoting the development of public transportation, which would rob the transaction of proprietary function and further negative estoppel. But, this is not necessary because the language of the instrument precludes a certain and positive intention of the parties to convey any interest in sovereignty lands. To the contrary, the recitals in the instrument clearly indicate that the parties contemplated only a transfer of swamp and overflowed lands under the procedures authorized by the Federal Swamp and Overflowed Lands Act, supra.

In the Daniell case, supra, the court's decision invoking estoppel appears to have been bottomed on the decision in Reid v. Barry, 112 So. 846. In that case the deed showed on its face that there was an actual intention to grant and receive a certain and definite estate. The deed of conveyance was a warranty deed expressly conveying the fee and "all of the estate and the property held by the grantor of any nature whatever." The appellate court, in the Reid case, applied legal estoppel because of the certainty of intention of the parties to deed the property as expressed therein. The court also noted that an estoppel would arise from covenants of warranty in the deed.

The deed to the railroad company contained no covenant of warranty of any kind and specifically recited that the *swamp and overflowed lands* were being given and granted upon the terms agreed upon between the grantor trustees and the board of directors of the grantee railroad, under the act providing for the incorporation and granting of aid to railroad and canal companies.

For the Evans defendants to contend successfully for the application of the doctrine of equitable estoppel or estoppel in pais, they must come into court in an unfavorable position to which they have been led by the silence, acts or words of the parties against whom the estoppel is claimed, in which event good conscience would preclude the assertion of legal title in the latter. It is difficult for the court to conclude that such is the case before it. At the time of the conveyance to the Evans defendants, they knew or should have known that they might well not be the fee simple owners of the submerged lands because the title insurance policy issued at the time of the conveyance to them contained a specific exception of the applicability of such policy to any portion of the Fish Creek tract which was under the waters of Old Tampa Bay or under the waters of Fish Creek. The Evans defendants knew, and have so stipulated, that the 5.17 acres in parcel no. 14 and all of the acreage in parcel no. 56 were either under the waters of Old Tampa Bay, being covered by salt water at high tide, or under the waters of Fish Creek. A casual inspection of the property reveals that the land is covered by tidal waters, and photographs of motorized craft running in waters over portions of the land have been admitted and filed in evidence in the cause.

The state of Florida could not until 1917 transfer sovereignty lands except by an affirmative act of the legislature. The conveyance by the trustees, pursuant to which the Evans defendants deraigned title, was made in 1888. In 1917 the trustees were expressly empowered by statute to sell and convey sovereignty

or submerged lands belonging to the state and such powers are still vested in them by law, chapter 7304, Laws of Florida, 1917, now section 253.12, Florida Statutes. In Martin, et al., Trustees of State Internal Improvement Fund v. Busch, 93 Fla. 535, 112 So. 274, the Supreme Court expressly held that prior to the enactment of the provisions of the 1917 act, if the trustees made any sales or conveyance of sovereignty lands, such as the lands in question here, under the impression that the lands sold were swamp and overflowed lands, such sales and conveyances, by reason of the absence of any power in the trustees to make them, were ineffectual. See also 26 Fla. Jurisprudence, Public Lands, section 99. The court further held that the power subsequently conferred by the 1917 statute on the trustees could not serve to make title to the sovereignty lands previously granted erroneously inure to the grantees since the trustees could not affect the legal status of the state's title prior to 1917. In Pierce v. Warren, Fla. 47 So.2d 857, the court stated that if the trustees actually conveyed sovereignty lands believing them to be swamp and overflowed lands, their mistake, however innocent, did not supply the power the trustees lacked. Clearly the trustees could not convey sovereignty lands in 1888.

It perhaps should be mentioned here that it is doubtful that, even under the 1917 act, as amended, the trustees may lawfully convey title to sovereignty lands covered by the navigable waters of the Fish Creek tract.

To apply estoppel against the defendant port authority (and, in effect, the trustees) would, in the court's opinion, not only be inequitable and serve to apply the 1917 legislative act retroactively back as far as 1855 when the trustees were created by statute, supplying them with power lacking before 1917, but would serve to defeat the purpose of the legal estoppel doctrine by thwarting the intention of the parties to the deed sought to be estopped as clearly reflected by its recitals.

It is, therefore, ordered and adjudged that the defendant port authority is the legal title holder and fee simple owner of all of the submerged lands lying within parcels no. 14 and no. 56 as shown on the chart contained in the instant record which has been stipulated to by all parties hereto as being accurate and correct and which is attached hereto as part of this opinion and judgment.

It is further ordered and adjudged that the Evans defendants have no right, title or interest in or to the submerged lands lying within parcels no. 14 and no. 56 as shown on the chart contained in the instant record which has been stipulated to by all parties hereto as being accurate and correct.

It is further ordered and adjudged that this court retains jurisdiction of this specific portion of the above-styled cause to grant such further relief as justice may require in view of the conclusions and adjudications set forth herein.