ALLEN, Acting Chief Judge.
The individual members constituting the Florida Board of Forestry have entered an appeal taken from a final decree enjoining the Florida Board of Forestry from interfering with the appellees’ use and occupancy of certain described real property consisting of some 70 acres out of several thousand acres owned by the State in that immediate vicinity.
The property was purchased at a public sale for payment of back taxes on February 26, 1945, and was a Murphy Act deed purchase.
Approximately a year before the said purchase, the Federal Government condemned this property in eminent domain proceedings and shortly thereafter the State of Florida, through the Trustees for the Internal Improvement Fund, issued the deed in question. From the time of the original purchase of the tax certificates on the property until date, appellees have paid all taxes upon said property. Appellees testified to various improvements made on the property and as to their continued possession of it. They claim they cut timber oh the property from 1945 until 1950, before the State claimed any interest, and again from 1960 to 1965, with the knowledge of the appellant, Florida Board of Forestry.
Appellees further assert that they had hunted, fished and camped on the property off and on since 1946. They posted the land from 1945 through 1950, and again from 1959 through 1963, and maintained that the property had been surveyed and certain roads constructed through it by appellees.
Appellees allege that they had no actual knowledge of the Federal Government’s interest in the property when they purchased tax certificates and obtained the deed, even though a suit had been filed in Jacksonville. Appellees were not made parties to the Government suit. On September 10, 1958, the Federal Govern *359 ment and the State of Florida entered into a purchase agreement. Under color of this purchase agreement the State attempted to take possession of the property here involved, whereupon the appellees brought suit in the lower court to prevent the State from interfering with their enjoyment and useful possession of said property.
The lower court entered a final decree in favor of the appellees under the authority of Lobean v. Trustees of Internal Improvement Fund, Fla.App. 1960, 118 So.2d 226. There are two Lobean cases.
The first case, Lobean v. Trustees of Internal Improvement Fund, supra, was decided by the First District Court of Appeal. The second case, Trustees of Internal Improvement Fund v. Lobean, Fla.1961, 127 So.2d 98, was a review by certiorari of the decision of the First District Court wherein the Supreme Court discharged the writ of certiorari, in effect affirming the District Court’s decision above referred to.
Despite the excellent brief and argument of the Assistant Attorney General, we shall affirm the lower court.
In Lobean v. Trustees of Internal Improvement Fund, supra, the First District Court held that the trustees were legally estopped to deny validity of the Murphy Act deed to submerged land, even though it was described by survey lines which could be located.
In that case the trustees admitted they had issued the deed to Lobean but alleged that the lands covered by that deed were then, and are now, submerged lands, title to which was then, and is now, vested in the appellees. The land in question had been submerged land before 1946 and was at the time of the suit. The appellant had paid county taxes on the land for eleven years, since the time he received his deed from the appellees in 1946.
In its opinion, the court said: (118 So.2d 226, 227)
“We agree with the Chancellor that the Murphy Act deed which the appellees sold and issued to the appellant in 1946 was void and conveyed no title or interest to the appellant in the land covered thereby. The evidence is uncontradicted that the land in question is submerged land. As held by the Florida Supreme Court in State ex rel. Ellis v. Gerbing, 1908, 56 Fla. 603, 47 So. 353, 22 L.R.A., N.S., 337, submerged lands are sovereignty lands. Sovereignty lands are not, of course, subject to taxation. See Park-N-Shop, Inc. v. Sparkman, Fla.1958, 99 So.2d 571. Sec. 192.06, Florida Statutes, F.S.A. Since a Murphy Act deed can be issued only to holders of tax certificates, representing taxes paid on the land covered by the deed (see Chapter 18296, Laws of Florida, Acts of 1937, F.S.A. § 192.35 et seq.), a Murphy Act deed cannot legally be issued on lands not subject to taxation.
“We disagree, however, with the holding of the Chancellor that there was no legal estoppel against the appellees. In our opinion this case comes squarely within the holding of the Florida Supreme Court in Daniell v. Sherrill, Fla.1950, 48 So.2d 736, 740, 23 A.L.R.2d 1410. In that case a suit to quiet title was brought by the members of the Florida Board of Forestry and Parks, a governmental agency of the State of Florida, for and on behalf of the State. The land involved was conveyed in 1832 to the United States. Nevertheless, the State of Florida taxed this United States land. The defendants’ predecessors in title had purchased tax certificates for 1870, 1871, and 1872 covering the lands in question, and thereafter acquired tax deeds from the State as grantor. In 1933 an act of session was made by the State of Florida granting exclusive jurisdiction over the property 'involved to the United States. In 1947 the United States declared the property surplus and not needed for national or military purposes, and through the War Assets Administration *360 sold the property to the Florida State Improvement Commission, a governmental agency of the State, which commission later sold it to the plaintiff state agency. In the suit to quiet title the Chancellor entered a final decree quieting title in the plaintiff State Board in the lands involved. This decree was appealed to the Florida Supreme Court, which said:
“T9 Am.Jur. 606, sets out the rule: “A grantor is generally estopped from denying the title of his grantee or his own authority to sell.” ’ ”
Subsequently, in its opinion, the court commented that since it was holding that the State was legally estopped to question the validity of a deed they had issued, it would not pass on whether equitable estoppel existed. The court further commented that it seemed unconscionable for the State to sell land to one of its citizens and then several years later attempt to sell it again on the excuse that it had acted illegally in issuing the first deed.
In Trustees of Internal Improvement Fund v. Lobean, Fla.1961, 127 So.2d 98, the Supreme Court, in its opinion, said:
“Legal estoppel or estoppel by deed is defined as a bar which precludes a party to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted therein. In other words, legal estoppel contemplates that if I execute a deed purporting to convey an estate or land which I do not own or one that is larger than I own and I later acquire such estate or land, then the subsequently acquired land or estate will by estoppel pass to my grantee.
“Legal estoppel or estoppel by deed is determined by the intention of the parties as expressed in the deed, whether or not legal estoppel may be applied in a given case is dependent entirely on the language used in the deed or which appears on the face of the instrument.
******
“It is quite true that in Gay v. Inter-City Tel. & Tel. Co., supra [Fla.1952, 60 So.2d 22]; Trustees of the Internal Improvement Fund v. Claughton, supra [Fla.1956, 86 So.2d 775]; Trustees of the Internal Improvement Fund v. Bass, supra [Fla.1953, 67 So.2d 433] and perhaps others, we recognized the doctrine contended for by petitioners that when one raises equitable estoppel against the state, he must support it by special and exceptional circumstances. We do not find that we have defined what constitutes ‘special and exceptional circumstances,’ but we have examined carefully the circumstances relied on by petitioners and we question their sufficiency to negate legal estoppel against the state.
“For the reasons so stated, the writ should be, and is hereby, discharged.”
Justice Drew wrote a special concurring opinion in Trustees of Internal Improvement Fund v. Lobean, supra, in which he stated:
“I concur in the foregoing opinion but would add these observations. In the dim, distant past, when the State and its subdivisions were concerned almost exclusively with the business of government, the argument advanced here that the doctrine of legal estoppel is not applicable to the State would have been sound. In this age, however, when the sovereign is engaged in almost every business activity known, from selling aspirin to operating vast industrial complexes, such argument falls by its own weight. The doctrine is, of course, not available when its application would affect the sovereign power of the State in the exercise of purely governmental functions. But when the State is engaged in the business of selling land or operating beyond its governmental *361 area, I can see no reason to exempt it from the same rules and regulations that the State itself imposes on its citizens. Under the circumstances presented by this record, a private citizen would have been estopped. I can think of no reason why the State should not be held to the same degree of conduct.”
In Daniell v. Sherrill, Fla. 1950, 48 So.2d 736, the Supreme Court had a suit to quiet title to land by members of the Florida Board of Forestry and Parks against Dan-iell, et al. The circuit court had entered a decree quieting title in the Florida Board. The Supreme Court held that the Florida Board of Forestry and Parks and individual members were estopped from questioning the validity of tax deeds from the state, under which plaintiff-Board claimed title to the land, and the truth of the recitals in such deeds.
The Court, in its opinion, page 739, said:
“This Court has repeatedly held that a tax deed vests in the Grantee a new, independent and paramount title. Hecht v. Wilson, 107 Fla. 421, 144 So. 886, Modified 145 So. 250; Bauman v. Healy, 141 Fla. 478, 193 So. 773; Torreyson v. Dutton, 137 Fla. 683, 188 So. 805, 190 So. 430.
“The tax deeds here under consideration recited that there were taxes due upon the property for three years and that the State granted title to appellants’ predecessors. Concededly, the tax deeds were invalid, since the United States owned the lands. The United States, or any purchaser from the United States other than the State of Florida would be entitled to challenge the validity of the tax deeds and the correctness of the recitals thereof, hut, may the State acquire the title of the United States and then assert the invalidity of the State’s deeds, and the untruth of the recitals thereof?
“31 C.J.S. Estoppel, § 37 page 213 asserts: ‘As a general rule, all parties to a deed, and those claiming through them, are bound by' the recitals in it legitimately appertaining to the subject matter of it. * * * Recitals of matters of fact in a deed are ordinarily binding on the grantor.’
“Normally a title acquired by a grantor subsequent to conveyance will inure to the benefit of his grantee. And this is so whether or not covenants of warranty are contained in the deed. 19 Am.Jur. 610, 617; Tucker v. Cole, 148 Fla. 214, 3 So.2d 875; Bisby v. Walker, 185 Iowa 743, 169 N.W. 469, 171 N.W. 152. This rule applies to States as well as individuals. Wolcott v. Des Moines Nav. & R. R. Co., 5 Wall. 681, 72 U.S. 681, 18 L.Ed. 689.”
Our Supreme Court held that regardless of the invalidity of the tax deeds and the untruth of their recitals, the State of Florida was estopped to question the validity of the deeds and truth of the recitals. The Court also held that in addition to the technical or legal estoppel, the facts in the case raised an equitable estoppel against the State.
Under the authority of the foregoing cases, we hold that there is a legal estoppel against the State in this case. While the equitable estoppel in this case is not as strong as in some of the other cited decisions, we think that it does exist. Thus, the foregoing principles of law above referred to which discuss equitable estoppel apply to the case sub judice.
We, therefore, affirm the lower court.
Affirmed.
SHANNON and HOBSON, JJ., concur.