399 So.2d 408 (1981)
STATE of Florida BOARD OF TRUSTEES OF the INTERNAL IMPROVEMENT TRUST FUND, State of Florida Department of Natural Resources, Appellants,
v.
Melvin J. LANEY, Appellee.
No. 80-1525.
District Court of Appeal of Florida, Third District.
June 2, 1981.
*409 Henry Dean, Tallahassee, for appellant.
Madigan, Parker, Gatlin, Swedmark & Skelding and Ross A. McVoy, Tallahassee, for appellee.
Peter Guarisco, Tallahassee, for Florida Land Title Ass'n as amicus curiae.
Before DANIEL S. PEARSON and FERGUSON, JJ., and PEARSON, TILLMAN (Ret.), Associate Judge.
FERGUSON, Judge.
The Trustees of the Internal Improvement Trust Fund of the State Department of Natural Resources appeal from a final summary judgment in which the trial court found that appellee, Melvin Laney, is the fee simple owner of and has record title to certain mangrove swamp land in Monroe County, Florida. The land is identified as Rodriguez Key and is legally described as:
Government Lot 1 of Section 8, Township 62 South, Range 39 East; Government Lot 1 of Section 17, Township 62 South, Range 39 East; Government Lot 1 of Section 18, Township 62 South, Range 39 East.
This property was conveyed to Laney on June 28, 1978. A predecessor in title originally purchased the property from the State in 1892. The State had acquired the right to convey Rodriguez Key and other swamp and overflowed lands from the United States by the Congressional Act of September 28, 1850[1] which set up procedures for conveying such lands. In 1872, Rodriguez Key was surveyed by a United States government surveyor and a meander line drawn roughly outlining the vegetation growth on the island. In 1879, the United States patented as swamp and overflowed lands the whole of fractional sections 8, 17, and 18 to the State of Florida by Patent No. 19, Tampa District, thereby passing title to these lands to the Internal Improvement Trust Fund as Trustees of the State of Florida. Title remained with the Trustees until the land was sold in 1892.
The Trustees raise four points on appeal: (a) there is a material issue of fact as to whether the high-water line can be located and is, therefore, the boundary between sovereign and uplands, (b) the Marketable Record Title Act does not extinguish the State's right, (c) the waters surrounding Rodriguez Key are navigable both in fact and law, and (d) the State of Florida vested appellee with title only to those lands above the mean high-water line. We affirm the summary judgment.
The trial court correctly found that the evidence establishes no genuine issue as to any material fact or law as to the controlling boundary line. The affidavit of surveyor Paul O'Hargan offered by Laney and the cases cited in support of his motion for summary judgment, Florida Board of Trustees of the Internal Improvement Trust Fund v. Wakulla Silver Springs Co., 362 So.2d 706 (Fla.3d DCA 1978), cert. denied 368 So.2d 1366 (Fla. 1979); and Trustees of the Internal Improvement Trust Fund v. Wetstone, 222 So.2d 10 (Fla. 1969), conclusively establish that the boundary line separating the uplands owned by Laney from sovereign lands is the meander line of the U.S. survey of 1872. Holl v. Talcott, 191 So.2d 40 (Fla. 1966); Martin v. Busch, 93 Fla. 535, 112 So. 274 (1927). The general denial by the Trustees and their statement in response to the motion for summary judgment that significant advancements and refinements in surveying title elevation measuring techniques within the past five years have made it possible to accurately determine the mean-high water line in Rodriguez Key are not sufficient evidence to prevent entry of summary judgment. Jones v. Stoutenburgh, 91 So.2d 299 (Fla. 1956).
There is also no genuine issue of material fact that the Marketable Record Title Act[2] does not preserve any claims of *410 the State to Laney's lands above the meander line. The State acquired the right to own and hold the land under navigable waters[3] lying within the State, including the shores and space between the ordinary high and low water marks upon its admission to the Union in 1845. Title to all other lands in the State remained in the United States, including title to certain swamp and overflowed lands. Wakulla Silver Springs Co., supra. Under the Swamp and Overflowed Land Grant Act of Congress of 1850 the State acquired the right to convey these federally owned lands.[4] As the Florida Supreme Court stated in Martin v. Busch, supra, at pages, 93 Fla. 568, 112 So. 285:
Lands bordering on the shores of a navigable lake or other navigable body of water may be swamp and overflowed lands within the meaning of the Swamp and Overflowed Land Grant Act of Congress of September 28, 1850; but such swamp and overflowed lands do not extend beyond the ordinary high-water mark of navigable lakes, or other bodies of navigable water, since lands under navigable waters to ordinary high-water mark became the property of the State by virtue of its sovereignty, attained when admitted into the Union as a state under the Act of Congress March 3, 1845.
Where, however, there is no official survey indicating what the high-water mark is or that it is any different from a meander line established by official survey, that meander line stands as the boundary line dividing swamp and overflowed lands from sovereignty lands. Busch, supra at 93 Fla. 572, 112 So. 286. See also Wakulla Silver Springs Co., supra; Wetstone, supra. It is the duty of the State to officially determine the limits and existing boundaries of the sovereignty lands under navigable waters on which the sold or conveyed lands border. Busch, supra at 93 Fla. 568, 112 So. 285.
In order to show that the lands in question are sovereign lands, the State must prove the existence of the high-water mark on Rodriguez Key and that the lands conveyed fell below this mark. This the State failed to do. There is no question of fact or law that the property conveyed to Laney's predecessor in title in 1892 was legally swamp and overflowed lands properly conveyed by the State under the Swamp and Overflowed Land Grant Act of 1850 and that by such conveyance, the State gave up any interest it had in these lands.
Because we find the meander line controlling in this case, we also find no material issues of fact or law raised by the Trustees' points (c) and (d).[5]
Affirmed.
NOTES
[1] Chapter LXXXIV, Acts of Congress of the United States, September 28, 1850, 43 U.S.C.A. § 981 et seq. (1979).
[2] §§ 712.01 .10, Fla. Stat. (1979).
[3] Navigability is a question of fact dependent upon whether the body of water is permanent in character, and, in its ordinary and natural state, is navigable for useful purposes and so situated that it may be used for purposes common to the public in the locality where it is located. Odom v. Deltona Corp., 341 So.2d 977 (Fla. 1976). See also § 197.228, Fla. Stat. (1979).
[4] See note 1, supra.
[5] The Florida Land Title Association, Inc. and the Florida Title Underwriters Bureau filed a brief of amicus curiae. We decline to discuss the issues raised in this brief as they are not relevant to a determination of this appeal.