**MOBIL OIL CORPORATION v. COASTAL PETROLEUM COMPANY, et al.**
Case No. GC-G-82-1089
Tenth Judicial Circuit, Polk County
July 30, 1982

Hume F. Coleman, Chesterfield Smith, Holland & Knight, for plaintiff.

Robert J. Beckham, James R. Hubbard, Beckham & McAliley, for defendant, State of Florida.

Robert J. Angerer, William J. Peebles, for defendant, Coastal Petroleum Company.

OLIVER L. GREEN, JR., Circuit Judge.

Plaintiff, Mobil Oil Corporation, a New York corporation, together with its predecessor, Virginia-Carolina Chemical Company, will be referred to as Mobil. Defendants, 1) Coastal Petroleum Company, a Florida corporation, will be referred to as Coastal, and 2) The State of Florida, the Department of Natural Resources of the State of Florida, and the Board of Trustees of the Internal Improvement Trust Fund of the State of Florida, will be referred to as the State.

This is a suit by Mobil under Chapter 65, Florida Statutes, to quiet its title to the lands described in Attachment A hereto with respect to claims made by Defendants. Mobil's recorded title in Polk County to the lands is undisputed except as this title may be affected by sovereignty considerations and Lease 224-B. The lands were conveyed to Mobil's predecessors through various deeds issued by the State, through the Trustees of the Internal Improvement Fund and the Board of Education, in the late 1800's and early 1900's without recorded reservation of ownership interest or public rights. The State asserts an ownership interest to a portion of the lands by contending that the State's conveyances were void because the lands underlie navigable waterbodies, to-wit, the Peace and Alafia Rivers, and are therefore state-owned sovereignty lands which, at the time of the State's deeds to Mobil's predecessors, were not subject to conveyance into private ownership. The State further contends that Mobil and its predecessors are charged with

visual notice of the characteristics of these waterbodies. The State first asserted their claim of ownership in 1977. It is undisputed that the official surveys of the lands in question, which were performed by United States government surveyors, did not list navigable waterbodies on the lands and did not meander any of the the streams located thereon.

Coastal asserts an interest to the minerals in the lands claimed by the State, and in additional lands described in Attachment A hereto underlying streams and creeks that flow into the Peace and Alafia Rivers, by virtue of an oil and gas exploration lease (Lease 224-B) that it received from the Trustees of the Internal Improvement Fund in 1946. This lease purported to convey certain mineral rights to state-owned lands. Mobil's chain of title, as reflected by the public records of Polk County, predates Lease 224-B.

Mobil filed its motion for summary judgment, with supporting materials, on May 17, 1982. A hearing on the motion, at which all parties were represented, was held on June 10, 1982. By order dated June 14, 1982, the parties were notified that the matter would be continued for decision until after resolution of the then pending interlocutory appeals and upon consideration of all other pleadings then on file. The appeals have now been dismissed, and the Court has considered all materials or pleadings on file in this case. The Court concludes that there is no genuine issue of material fact, and that Mobil is entitled to prevail over Defendants as a matter of law. Consequently, Mobil's motion for summary judgment quieting its title to the lands described in Attachment A hereto against any and all claims of Coastal and the State should be and is hereby granted.

My findings are as follows:

(1)   This Court has jurisdiction.

(2)   Fee simple title to the lands described in Attachment A hereto is now, or was, or has been in Mobil during the period of its record title to the lands, without any recorded reserved interests in the State, and free of any legal claim of Coastal under Lease 224-B.

(a)   United States Government surveys of the lands between 1850 and 1855 recited no navigable waterbodies on the lands and did not meander any of the streams.

(b)   *Martin v. Busch,* 112 So. 274 (Fla. 1927), established the concept that a grantee of *unsurveyed* land bordering on an obviously navigable waterbody takes with notice that a conveyance of this land does not include the sovereignty land underlying the waterbody. This concept

does not apply in the present case, where the land was surveyed *before* it was acquired by the State and conveyed by the State to the original grantee. *Pierce v. Warren,* 47 So.2d 857, 860 (Fla. 1950); *Odom v Deltona Corp,* 341 So.2d 977, 988-89 (Fla. 1976).

(c) The lands in question were originally conveyed many years ago by the federal government to the State without documented sovereignty limitations and were subsequently deeded to Mobil's predecessors in title either as swamp and overflow lands or internal improvement lands by the State through the Trustees of the Internal Improvement Fund, or as school lands by the State through its Board of Education. As the State did not claim an interest in the lands before the 1970's, it cannot now claim ownership by questioning its own recitals, in its original deeds conveying the lands, that the lands were capable of being conveyed without reservation. *Odom v. Deltona Corp., supra; Trustees of Internal Improvement Fund v. Lobean,* 127 So.2d 98 (Fla. 1961); and *Daniell v. Sherrill,* 48 So.2d (Fla. 1950).

(d) In *Odom v. Deltona Corp., supra,* the Supreme Court recognized that Florida land titles would be thrown into turmoil if state officials were permitted to question the validity of surveys and deeds that are over 100 years old:

> Stability of titles expressly requires that, when lawfully executed land conveyances are made by public officials to private citizens without reservation of public rights in and to the waters located thereon, a change of personnel among elected state officials should not authorize the government to take from the grantee the rights which have been conveyed previously without appropriate justification and compensation. If the state has conveyed property rights which it now needs, these can be reacquired through eminent domain; *otherwise, legal estoppel is applicable and bars the Trustees' claim of ownership, subject to rights specifically reserved in such conveyances.*

341 So.2d at 989 (emphasis supplied).

(e) In *Odom v. Deltona Corp.,* supra, the Supreme Court refused to allow the Trustees of the Internal Improvement Fund to dispute the declaration in their deed that the land was swamp and overflowed land which was capable of being conveyed. The trial court, in language later approved by the supreme Court, had stated:

> This Court is in a poor posture to evaluate the work of those surveyors of many decades past. It can only be accepted that they did their job as instructed and recorded what they found

then, which may or may not be what appears now. Fresh water lakes and ponds do change rather significantly because of both natural and artificial alterations in the areas involved. It is to be observed that governmental conveyances were made in reliance on them and the grantees of such conveyances had the right to assume the U. S. Government and the Trustees were acting lawfully.

341 So.2d at 984.

(f) In applying the doctrine of estoppel against the State in a virtually identical title dispute over submerged lands, Judge Stephenson of this Court held last year:

[T]he Trustees are legally estopped to rebut the presumption of non-navigability after the government survey has stood unimpeached for so many years. The Trustees expressly stated in the initial deed that the land was swamp and overflow land, which by definition means it is not sovereignty land. . . . The Trustees are estopped from presenting the issue of sovereignty ownership for determination now by this Court.

*American Cyanamid Company v. State Board of Trustees of the Internal Improvement Trust Fund,* No. GCG-80-290, Final Judgment at p. 13 (Fla. 10th Cir.Ct. July 27, 1981).

(g) The state's selection and classification of the land as swamp and overflowed land constituted a proper exercise of power conferred by state statutes. Chapter 332, Laws of Florida (1850); Chapter 610, Law of Florida (1854-55). The physical character and legal classification of the lands necessarily were also confirmed by federal authorities pursuant to the Swamp Lands Act of 1850, 9 U.S. Stat. 519, 43 U.S.C. § 981 *et. seq. McCormick v. Hayes,* 159 U.S. 332 (1895); *French v. Fyan,* 93 U.S. 169 (1876). These actions of duly constituted authority cannot here be questioned under Florida law. Section 197.228(2), Florida Statutes, provides that navigable waters in Florida "shall not be held to extend to any permanent or transient waters in the form of so-called lakes, ponds, *swamps or overflowed lands,* lying over and upon areas which have heretofore been conveyed to private individuals by the United States or by the state *without reservation of pubic rights in and to said waters.*" (Emphasis supplied.) In construing Section 197.228(2) to accord finality to swamp and overflow determinations made by prior officials, the Supreme Court has approved the following statement:

*There is a recognition in Section 197.228(2) that an unconditional conveyance by the state or national government of a described area to private ownership without a specific reservation is in*

*itself a contemporaneous finding that such area is not sovereignty property and that such finding should not be questioned.* The actions of duly constituted authority are recognized as entitled to be regarded as based on a proper exercise of powers conferred and not a usurpation or other illegal conduct.

*Odom v. Deltona Corp., supra,* at 984 (emphasis supplied). The same reasoning applies to and validates the state's classification and conveyance of those lands included in Attachment A hereto that were described as internal improvement lands or as school lands in the original conveyances by the State to Mobil's predecessors.

(h)   Coastal, as a party in privity with the State, is legally limited in challenging the validity of the conveyances by the State and its departments or agencies to Mobil's predecessors in title to the same extent as the State is limited, because "[i]t is well settled, also, that a person claiming title under one who is estopped will also be bound by the estoppel." *Key West Wharf & Coal Co. v. Porter,* 63 Fla. 448, 58 So. 599, 610 (1912); see also, *e.g., McAdoo v. Moses,* 101 Fla. 936, 132 So. 638, 640 (1931); *Coral Realty Co. v. Peacock Holding Co.,* 103 Fla. 1916, 138 So. 662, 625 (1931).

(3)   The deeds to Mobil's predecessors were effective to convey title to the lands, including all proprietary rights in the soil. The Court does not at this time determine whether any waterbodies on the lands are, or ever were, navigable in fact, because it is unnecessary to do so to decide this case. Even assuming that the lands at the time of the State's original conveyances were sovereignty in character and subject to a governmental trust for the preservation of public easements in the waters thereon, a conveyance of the State's proprietary interests in sovereignty property has long been recognized as proper under Florida law, subject only to the State's implied retention of necessary regulatory powers over such property. *See State v. Black River Phosphate Company,* 13 So. 640 (Fla. 1893); *Pembroke v. Peninsular Terminal Co.,* 146 So. 249, 263 (Fla. 1933); and *State ex rel. Buford v. City of Tampa,* 102 So. 366, 340-41 (Fla. 1924). So long as the right of public use of the navigable waterbody is preserved, the public trust is satisfied, irrespective of the title to the underlying bottom. *Holland v. Ft. Pierce Financing & Construction Co.,* 27 So.2d 76, 81 (Fla. 1946). Since Mobil does not seek to quiet title against public use or other governmental rights, there is no need to decide how the deeds and other past conduct of state officials affected any such rights. Also, although not essential for determination in this action, this Court recognizes that once the State has parted with its proprietary interest in lands under navigable or non-navigable waters, it nevertheless retains authority to regulate activities

in the waters or on adjoining wetlands to protect the public health, safety and welfare. *See Gies v. Fischer,* 146 So.2d 361, 363 (Fla. 1962) and *Graham v. Estuary Properties, Inc.,* 399 So.2d 1374 (Fla. 1981).

(4) Mobil's record title to each parcel of the lands in question is based on a continuous chain of recorded title transactions proceeding from a valid "root of title" which was recorded in Polk County for more than 30 years before the effective date of the Florida Marketable Record Title Act (the "MRTA"), Chapter 712, Florida Statutes. Although it is not essential to the judgment in this case, Mobil clearly also buttresses its marketable record title to the lands by virtue of the provisions of the MRTA. Even assuming that the land in question is sovereignty land (which, I repeat need not be and is not decided as an issue of fact in this case), the MRTA has consistently been construed to vest fee simple title as against a sovereignty ownership claim by the State or the Trustees. *Odom v. Deltona Corp., supra; Board of Trustees of the Internal Improvement Trust Fund of the State of Florida v. Paradise Fruit Company, Inc.,* 7 F.L.W. 932 (Fla.5th DCA April 28, 1982); *State Department of Natural Resources v. Contemporary Land Sales, Inc.,* 400 So.2d 488 (Fla.5th DCA 1981); *State Board of Trustees of the Internal Improvement Trust Fund v. Laney,* 399 So.2d 408 (Fla. 3d DCA 1981); and *American Cyanamid Company v. State Board of Trustees of the International Improvement Trust Fund, supra.*

The attempted recording of Coastal's lease in Polk County in 1954 was insufficient to act as an exception to the marketability of Mobil's title to the lands. The attempted recording of an unexecuted printed, and conformed copy as an attachment to a royalty deed from Coastal to a third party does not constitute the recording of an adverse title transaction, as contemplated by the MRTA. The descriptions of the lands in the lease as "the bottoms of and water bottoms adjacent to" certain named rivers "together with all connecting sloughs, arms and overflow lands located in such waters" is too vague and uncertain to enable the land to be identified and, therefore, the lease cannot qualify as an exception to marketability. *Board of Trustees of the Internal Improvement Trust Fund of the State of Florida v. Paradise Fruit Company, Inc., supra; American Cyanamid Co. v. State Board of Trustees of the Internal Improvement Trust Fund, supra.*

(5) Inasmuch as the State made no reservation of public ownership rights in the prior conveyances of these lands to Mobil and to its predecessors (of which Coastal had notice by virtue of the recording acts), any claim by Defendants based upon Lease 224-B is without foundation in law or in fact.

(6)   Because it is unnecessary to my decision, I make no finding at this time (indeed, the facts may be controverted) on Mobil's claim that it has perfected title to the lands under the statutory doctrine of adverse possession.

It is, thereupon, ORDERED AND ADJUDGED that:

(a)   Under principles of legal estoppel, as recognized, ratified and confirmed in the Florida Statutes, the conveyances by the State of the lands described in Attachment A hereto were valid and effective as against the Defendants to transfer title to the subject lands to Mobil's predecessors, and Mobil (or its grantees) for that reason is the owner in fee simple of all lands described in Attachment A hereto, said lands being located in Polk County, Florida.

(b)   The fee simple title in and to the lands described in Attachment A hereto is hereby quieted in Mobil or in those claiming by, through or under it, as against Defendants. Mobil has been the owner of these lands from the date of their acquisition by Mobil by recorded deed, until the lands, or some of them, were conveyed to third parties, free and clear of any right, title, interest or claim of any kind whatsoever by Defendants. Chapter 65, Florida Statutes (1981).

(c)   The fee simple title in and to the lands described in Attachment A hereto also includes the entire ownership by Mobil of all proprietary rights in both the surface and subsurface of the lands.

(d)   Mobil's fee simple title to the lands described in Attachment A hereto was acquired prior to and is superior in all respects to any rights granted to Coastal under Lease 224-B.

(e)   This final judgment does not extinguish any rights of the public to use the waters of the Peace or Alafia Rivers for boating, fishing, swimming, or other public purposes, nor does it establish any right in Mobil, or those claiming by, through, or under it, to prevent or interfere with any such public use. It is not necessary in this case to now decide how the deeds and other past conduct of the State affected public use or other governmental rights in the Peace and Alafia Rivers because Mobil has excluded any such rights from the clouds it has sued to remove, and because the State has not alleged that Mobil has invaded such rights and has not sought affirmative relief from this Court (whose jurisdicition it denies) to declare or enforce such rights.

(f)   This Court does not by this final judgment intend to interfere in any way with the lawful rights of the State, or any agency thereof, to exercise its environmental and other governmental powers over any waterbodies flowing through said lands, or to regulate those waterbodies

for drainage, irrigation, pollution control, navigation, fishing, or other public purposes. This final judgment is also not intended to affect the rights of other riparian owners who are not parties to this action or of the public to the continued use of presently existing public rights of way on the lands.