**CALIFORNIA ELECTRIC CO., Limited,
v. UNITED STATES.**

No. 45543.

Court of Claims.

Dec. 4, 1944.

Walter G. Moyle, of Washington, D. C. (Ernest H. Oliver, of Washington, D. C., on the brief), for plaintiff.

Daniel F. Hickey, of Washington, D. C., and Samuel O. Clark, Jr., Asst. Atty. Gen. (Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, LITTLETON, WHITAKER, and MADDEN, Judges, and BOOTH, Chief Justice (retired), recalled.

LITTLETON, Judge.

Plaintiff insists that it was not subject to assessment for any of the tax in question under section 800, Schedule A(3), Revenue Act of 1926, as amended by section 723 of the Revenue Act of 1932, 26 U.S.C.A.Int. Rev.Acts; that these sections do not impose a tax upon other than sales or transfers of legal title to shares of stock, and claims that none of the deliveries or transfers described in the findings, and summarized in finding 20, were taxable sales or transfers of legal title, except the endorsement and delivery of certificate No. 42 by Mrs. Morello to Bronson, finding 17. As to the two last-mentioned transfers, plaintiff insists that it was not liable for the tax and that such transfers were taxable to Bronson or to Mrs. Morello and Kuehn.

Section 800 of Title VIII of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int.Rev.Acts, is as follows:

"On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, *and paid*, for and in respect of the several bonds, debentures, or *certificates of stock* and of indebtedness, and other documents, instruments, matters, and things mentioned and described in *Schedule A* of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by *any person* who *makes, signs, issues, sells,* removes, consigns, or ships the same, or *for whose use or benefit* the same are made, *signed, issued, sold,* removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax." [Italics supplied.]

The pertinent portion of Schedule A(3) of the Revenue Act of 1926 as amended by Section 723 of the Revenue Act of 1932, 47 Stat. 169, reads as follows:

"Capital stock (and similar interests), sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subdivision 2, or to rights to subscribe for 'or to receive such shares or certificates, whether made upon or shown by the books of the corporation or other organization, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale *(whether entitling the holder in any manner to the benefit of such share, certificates, interest, or rights, or not)*, on each $100 of par or face value or fraction thereof of the certificates of such corporation or other organization (or of the shares where no certificates were issued), 4 cents, and where such shares or certificates are *without par or face value,* the tax *shall be 4 cents* on the transfer or sale or agreement to sell on each share (corporate share, or investment trust or other organization share, as the case may be): * * *." [Italics supplied.]

It will be seen that section 800 imposes the tax specified in Schedule A for and in respect of certificates of stock and other documents, and for and in respect of other matters and things mentioned in the sched-

ule, and provides that such tax is to be paid by any person who makes, signs, issues or sells certificates of stock, or for whose use or benefit certificates of stock are made, signed, issued, or sold. Schedule A provides, among other things, that sales or deliveries of or transfers of legal title of shares or certificates of stock, or to rights to subscribe for or to receive such shares or certificates, shall be taxed at 4 cents a share where the shares are without par value, as is the case here.

■■■ Prior to October 17, 1932, Rice, Bronson, and Morello deposited a total of 27,000 shares of plaintiff's stock with the Bank of America National Trust and Savings Association (finding 3). November 29 they, respectively, endorsed the certificates to the bank as trustee under a Trust Agreement. By these transfers the bank acquired the legal title theretofore vested in the transferors. On the same day the bank presented the certificates for the 27,000 shares to plaintiff and caused to be issued to it and registered in its name, as trustee, certificate Nos. 39, 40, and 41 for a like number of shares (finding 7). It is immaterial that there was no sale. It is also immaterial that under the details of the Trust Agreement the transferors retained equitable ownership of the stock. Founders General Corp. v. Hoey, 300 U.S. 268, 274, 57 S.Ct. 457, 81 L.Ed. 639; Franklin Life Insurance Co. v. United States, 93 Ct.Cl. 259, 266, 37 F.Supp. 155. The tax of $360 on each of these transfers, totaling $1,080, was therefore properly assessed and collected.

It follows from what has been said above that there was a transfer of legal title when the bank, on August 14, 1935, transferred the stock back to Mrs. Rice, Bronson and Morello (finding 8) pursuant to the agreement revoking the trust. Art. 34, Regs. 71 (1932 ed.) provides that: "The following are examples of transactions subject to tax: * * * (b) The transfer of stock to or by trustees. * * *." These transfers were therefore taxable under the statute. By the revocation agreement Mrs. Rice transferred to plaintiff her "right to receive" from the bank the certificate, No. 39, which plaintiff had issued to the bank in lieu of the original certificate transferred to the bank by her husband. The transfer of this right to receive was taxable. Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 63, 64, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111. This was not a

"surrender of stock for extinguishment" within the meaning of art. 35(f) of Regulations 71. No tax was paid by Mrs. Rice, Bronson and Morello on these retransfers by the bank, and a stamp tax in the further sum of $1,080 was assessed against plaintiff.

The next question is whether the tax, penalty, and interest were properly assessed against plaintiff, whose stock is involved in the transfers in question, and whether it is legally liable under section 800, Schedule A(3), for the amounts so assessed.

■ The facts show that in every instance, except the transfer on August 14 by Mrs. Rice to plaintiff of her right to receive certificate No. 39 from the bank, plaintiff "issued" a new certificate in lieu of the one surrendered to it by the person to whom it had been endorsed and delivered by its former owner or holder (findings 15, 16, and 18). Plaintiff also "signed" each of these certificates before issuance. Under these facts we think plaintiff is liable for the tax, interest, and penalty. In Raybestos-Manhattan, Inc. v. United States, supra, two corporations conveyed, pursuant to a consolidation agreement, their property to a new corporation in return for shares of its stock which were issued direct to the stockholders of the transferor corporations in proportion to their holdings, rather than to the two corporations. The court stated that the transaction was taxable not only on the original issue of shares, but also on the transfers by which the rights of the two corporations to receive such shares were acquired by the stockholders under the agreement. Before discussing the facts, the court said, 296 U.S. 60, at page 61, 56 S.Ct. 63, at page 64, 80 L.Ed. 44, 102 A.L.R. 111: "Section 800 imposes liability for the tax upon the transferor, the transferee and the corporation whose stock is transferred."

In United States v. Westbrook-Thompson Holding Corporation, 5 Cir., 94 F.2d 532, 533, 534, the court said:

"The corporation had no interest in the transfer; and, after the original issue of corporate stock, which issue is separately taxed in Schedule A(2), a corporation commonly has no interest in the transfers of its stock. Unless the transferred certificates be brought to it for reissue, it would usually have no part in or even knowledge of the transfer. In such a case it would be unreasonable to tax it for a transaction it could not control. The words used in Raybestos-Manhattan [Inc.] v. United States, 296 U.S. 60, 61, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111, 'Section 800 imposes liability for the tax upon the transferor, the transferee and the corporation whose stock is transferred,' may not apply to all cases. But we think they apply here. The parties to this transaction did not have it independently of and without the knowledge of the corporation whose stock was to be transferred. The partnership endorsed the certificates in blank and applied to the corporation for reissued ones in other names, and, after getting them, delivered them to the partners. The Westbrook-Thompson Holding Corporation participated in, in fact accomplished, the transfer by issuing the new certificates. Section 800, 44 Stat. 99, requires payment by any person who 'signs or issues' certificates of stock as well as by those 'for whose use or benefit the same are made, signed, issued (or) sold.' *The corporation here could have refused to issue the new certificates until the tax was provided for.* In the Raybestos-Manhattan case, supra, the corporation whose stock was transferred was held to pay the tax, although it had no interest in the transfer with reference to which the tax was assessed, it being a transfer from another corporation to its stockholders. The same thing was true in the case of the Automatic Shares Company dealt with in Founders General Corporation v. Hoey, 300 U.S. 268, at page 271, 57 S.Ct. 457, 458, 81 L.Ed. 639. See, also, Standard Oil Co. v. United States, 9 Cir., 90 F.2d 571. Under the agreed facts there should have been no recovery. The cause is reversed and remanded with direction to enter judgment accordingly." [Italics supplied.]

In United States v. Revere Copper and Brass Co., 2 Cir., 100 F.2d 391, 392, the court in commenting upon the Westbrook-Thompson case said:

"In United States v. Westbrook-Thompson Holding Corporation, 5 Cir., 94 F.2d 532, the court upheld the stamp tax where upon the surrender of corporate stock owned by a partnership, it was reissued in the individual names of the partners. The court held that where a corporation accomplishes a transfer of its stock by issuing new certificates, it is liable for the tax on the transfer of the stock."

In the case at bar plaintiff in each instance, as hereinafter stated, issued new certificates of stock, except in connection with the transfer by Mrs. Rice to plaintiff of her right to receive Certificate No. 39 from the bank.

In the case of In re Consolidated Automatic Merchandising Corporation, 2 Cir., 90 F.2d 598, 600, the court said:

"The remaining question is whether the corporation that issued the stock direct to the voting trustees became liable under section 800, Schedule A(3) of the Revenue Act of 1926, for the payment of taxes upon transfers of stock by the recipients of the voting trust certificates. In Raybestos-Manhattan Inc. v. United States, 296 U.S. 60, 61, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111, Justice Stone said that: section 800, Schedule A (3) of the Rev- upon the transferor, the transferee and the corporation whose stock is transferred.' It was thought by the District Court that this remark was a dictum and that the terms of the statute do not justify the imposition of a tax for the transfer of the shares on the corporation. Doubtless the remark was not necessary for the decision rendered in Raybestos-Manhattan Inc. v. United States, supra, but we do not share the view that section 800 Schedule A (3) did not render the corporation liable for the tax."

Upon the facts and under the cases cited, plaintiff is not entitled to recover and the petition must be dismissed. It is so ordered.