60 So.2d 22 (1952)
GAY, Comptroller, et al.
v.
INTER-COUNTY TEL. & TEL. CO.
Supreme Court of Florida, Division B.
July 18, 1952.
Rehearing Denied August 18, 1952.
*23 Richard W. Ervin, Atty. Gen., and T. Paine Kelly, Asst. Atty. Gen., for appellants.
Henderson, Franklin, Starnes & Holt, Parker Holt, and Lloyd G. Hendry, Fort Myers, for appellee.
MATHEWS, Justice.
This is a suit in equity to enjoin the enforcement and execution of a tax warrant issued by the Comptroller of the State of Florida for taxes allegedly due under Chapter 201 F.S.A. for documentary excise taxes on account of shares of stock of the appellee, a domestic corporation.
The issues were made by the complaint and answer and the amendments thereto. The parties stipulated as to certain facts and that the questions involved might be submitted to the Court for adjudication upon the record as made by the pleadings, stipulation and exhibits. The Court below found that the documentary excise taxes, covered by the warrant and sought to be collected, was not a legal obligation of the appellee and perpetually enjoined the Comptroller and the Sheriff from attempting to enforce collection thereof. This appeal is prosecuted from that decree.
Before stating the questions involved we will first briefly state the material facts as disclosed by the record.
In April, 1925, the stockholders of the corporation amended the charter as provided by the laws of Florida and authorized the corporation to issue 5,000 shares of stock without nominal or par value. Thereafter the company issued various certificates of stock aggregating the entire 5,000 shares authorized. Later these certificates were surrendered and cancelled and Certificate No. 21 was issued on March 26, 1928, to Barron G. Collier for the entire 5,000 shares of stock. At that time there was no Documentary Stamp Tax Law in effect in Florida.
On April 24, 1931, the charter was again amended to authorize the issuance of 10,000 shares of stock without nominal or par value. On April 17, 1931, the company issued an additional 5,000 shares of its stock which together with the 5,000 shares outstanding constituted all of the stock the company was authorized to issue. There was no Documentary Stamp Tax Law in effect at the time of the issuance of this new stock. The Documentary Stamp Tax Act became a law July 28, 1931.
From the effective date of the Documentary Stamp Tax Act to August 14, 1941, there were transferred upon the books of the corporation certificates of shares of stock of the aggregate number of 25,100, some of them to a trustee. It is obvious that these transactions did not constitute an original issue of stock but did constitute the transfer of stock certificates and all of these transfers were shown upon the books of the company. All of the original issue of stock was issued by the corporation prior to the effective date of the Documentary Stamp Tax Act. It is admitted by the parties that certificates transferred to a trustee or from a trustee regardless of the beneficial ownership are taxable under Section 201.04 F.S.A. All of these transfers of stock stand on the same basis. The difference is that the appellants claim the corporation is liable for the tax and the appellee claims that the sellers or the transferors are liable for the tax.
This Documentary Stamp Act is similar to the Federal Act 26 U.S.C.A. § 1800, et seq., and therefore takes the same construction in the Florida courts as given to the Federal Act in the Federal courts. State ex rel. Packard v. Cook, 108 Fla. 157, 146 So. 223.
All sections of this tax law having any bearing upon the contentions of the parties must be construed together in order to arrive at the intent of the Legislature.
*24 As there can be no question that the original issue of stock certificates prior to the enactment of the law in question were not taxable, it is only necessary to consider at this time Section 201.01, F.S.A., and Section 201.04, F.S.A., and they are as follows:
"201.01 Documents taxable, generally

"There shall be levied, collected and paid the taxes specified in this chapter, for and in respect to the several documents, bonds, debentures or certificates of stock and indebtedness, and other documents, instruments, matters, writings, and things described in the following sections, or for or in respect of the vellum, parchment, or paper upon which such document, instrument, matter, writing, or thing, or any of them, are written or printed by any person, who makes, signs, executes, issues, sells, removes, consigns, assigns, or ships the same, or for whose benefit or use the same are made, signed, executed, issued, sold, removed, consigned, assigned, or shipped in the State of Florida."
"201.04 Tax on bills of sale, agreements, transfers, etc., of personal property and interests therein
"On all sales, agreements to sell, or memoranda of sales or deliveries of, transfers of legal title to shares, or certificates of stock or profits or interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock interests rights or not, on each one hundred dollars of face value or fraction thereof the tax shall be ten cents; and where such shares are without par or face value, the tax shall be ten cents on the transfer or sale or agreement to sell on each share; provided, that in case of sale, where evidence of transfer is shown only by the books of the corporation, the stamps shall be placed upon such books of the corporation; and where the change of ownership is by transfer of the certificate, the stamps shall be placed upon the certificates; and in case of an agreement to sell or where the transfer is made by delivery of the certificate assigned in blank, there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned, shall show the date thereof, the name of the seller, the amount of the sale, and the matter or things to which it refers. Any person or corporation liable to pay the tax as herein provided, or anyone who acts in the matter as agent or broker for such person or corporation, or who makes any such sale, or who in pursuance of any such sale, delivers any certificate or evidence of the sale of any stock, interest or right, or bill or memorandum thereof, as herein required, without having the proper stamps affixed thereto, with intent to evade the foregoing provisions, shall be deemed guilty of a misdemeanor, and upon conviction shall be punished accordingly." (Italics supplied.)
When we read these two sections together with many of the cases from the United States Courts construing the Federal Statute, we are forced to the inescapable conclusion that the transfer of the shares of stock in question from the effective date of the Documentary Stamp Tax Act until August 14, 1941, is not only taxable, but that the corporation is liable for the tax.
The corporation is a Florida corporation organized under the laws of the State of Florida. It cannot seek and obtain the benefits from the laws of the State of Florida and escape the liabilities imposed by the laws of Florida.
Under the agreed statement of facts the corporation was not a party to the transfers of the stock except that it was the practice of the corporation to keep a record of the *25 owners of the stock. This record was accomplished by having the vendee bring in the stock certificate he had purchased from a previous stockholder and report such transfer to the company. The company then entered these facts upon its stock books and gave to the new owner of the stock another certificate and cancelled the old one, and the new certificate evidenced the fact that the new stockholder was the owner of so many shares. The stubs were kept by the company showing the issuance of the new stock and who the owners were. The new certificates prepared by the company contained an assignment form to facilitate the new owner in selling and transferring his stock. Notwithstanding the fact that it it contended and may have been stipulated as a conclusion that the corporation was not a party to the transfer, the actual facts stipulated do show that the corporation was a party to the transfer. It kept the stock books and the stubs. It had prepared the certificates. They were signed by the officers of the corporation. New certificates were delivered by the corporation to new stockholders upon the surrender of the old certificates.
The appellants have cited the cases of Ladner v. Pennroad Corp., 3 Cir., 97 F.2d 10, 118 A.L.R. 1289; Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639; California Electric Co. v. U.S., 57 F. Supp. 957, 102 Ct.Cl. 497; Hollister v. United States, D.C., 38 F. Supp. 7; and many other federal cases, in support of its contention that the corporation is liable for the payment of the tax. The appellee attempts to distinguish these cases by claiming that in each of them two elements are present which are not present in this case: (1) the transfer was not complete until the corporation had issued the new certificate, (2) the corporation participated in the transfer.
The fallacy of this attempted distinction is clear because these two elements are present in the case now under consideration. It may readily be admitted that so long as shares of stock are floating around from person to person, from assignor to assignee, from transferror to transferree, the corporation was not liable for the tax, but when, under its practice, the corporation received an old certificate which had been sold, transferred, or assigned, and issued a new certificate to the new owner in lieu of the old, kept records on the stubs of the details of the transfers, the transaction became complete and the corporation actually participated in the transfer and became liable for the tax. We, therefore, conclude that all of the shares of stock issued by the corporation in transfer for old shares of stock surrendered to the corporation under the facts set forth herein from the effective date of the Documentary Stamp Tax Act to and including the 14th day of August, 1941, are taxable and the corporation is liable for the tax.
We now come to the next important question. August 14, 1941 the directors and stockholders of the corporation held a meeting in New York City. At this meeting a plan of re-capitalization was adopted. The directors unanimously passed the following resolution:
"Resolved, that the plan of recapitalization presented to this meeting be, and it is hereby, approved by the Directors of this Corporation and the Directors of the Corporation adopt said plan of recapitalization as being in the best interest of the Corporation and recommend the said plan to the stockholders for approval and adoption by them; * * *."
On the same day the stockholders adopted a resolution as follows:
"Resolved, that the plan of recapitalization presented to the stockholders be, and is hereby, approved by the stockholders of the Corporation and the stockholders of the Corporation adopt said plan of recapitalization as being in the best interest of the Corporation; * * *."
The appellee contended and the Court below so found that the corporation was not liable for the tax on new stock and bonds issued by the corporation pursuant to this plan of recapitalization, or reorganization, because the corporation did not acquire any new capital or add any earned surplus to its capital structure.
*26 In addition to the sections of the law which we have heretofore quoted in full, Section 201.05, F.S.A. has a material bearing upon this question. This section is as follows:
"On each original issue, whether organization or reorganization, of certificates of stock issued in the State of Florida, or profits, or of interest in property or accumulations, by any corporation, on each one hundred dollars of face value, or fraction thereof, the tax shall be ten cents; provided, that where a certificate is issued without face value, the tax shall be ten cents per share, unless the actual value is in excess of one hundred dollars per share in which case the tax shall be ten cents on each one hundred dollars of actual value or fraction thereof. The stamps representing the tax imposed by this subsection shall be attached to the stock books, and not to the certificates issued."

It should be noted that this section applies upon each original issue whether organization, or reorganization, of certificates of stock. It matters not what the action of the stockholders and directors may be called, no citation of authority is necessary to establish the fact that there was a plan of reorganization and new stock was issued pursuant to said plan. The Act requires "the stamps representing the tax imposed by this subsection shall be attached to the stock books, and not to the certificates issued."
It will be observed that the resolution of the directors and of the stockholders determined that "said plan of recapitalization as being in the best interests of the corporation."
This law is a revenue measure only. Its purpose was to raise revenue. The corporation was in possession of the stock books. It owned the stock books. It was the duty of the owner of the stock books and of the corporation, which had possession of the stock books, to place the stamps on the stock books. This duty likewise imposed liability and the corporation was liable for this tax. Rio Grande Oil Co. v. Welch, 9 Cir., 101 F.2d 454; Iron Fireman Manufacturing Co. v. U.S., 9 Cir., 106 F.2d 831; Raybestos-Manhattan Inc. v. U.S., 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44.
As shown by the record, under this plan the capital structure of the corporation was increased from an authorized capital of 10,000 shares (no par) with a stated value of $45 per share, $450,000, to an authorized capital of 40,000 shares common stock of par value of $25 per share, $1,000,000, and 20,000 shares of preferred stock of par value $25 per share, $500,000.
In carrying out the plan there were actually issued by the corporation under surrender and cancellation of the 10,000 shares of non par common stock outstanding under the former capitalization plan, 10,240 shares of preferred stock of par value of $25 per share and 29,292 shares par value $25 per share.
We, therefore, conclude that the shares of stock issued by the corporation pursuant to this plan of reorganization adopted by the stockholders and directors of the corporation are taxable and that the corporation is liable for the tax, under the provisions of Chapter 201, F.S.A.
It is next contended that the corporation is not liable because the meetings and transactions took place in New York. This position is not tenable. The corporation is a domestic corporation organized under the laws of the State of Florida and is subject to such laws. Its physical assets are located in the State of Florida. In the case of Bickell v. Lee, Comptroller of Florida, D.C., 5 F. Supp. 720, 721, in a Court composed of Circuit Judge Bryan and District Judges Sheppard and Akerman, it was held:
"However, where a sale is made of stock of a Florida corporation and a transfer made upon the books of the corporation in Florida, the state may properly tax the transfer as one made within the state. See People ex rel Hatch v. Reardon, supra." [110 App. Div. 821, 97 N.Y.S. 535.]
This case found its way to the Supreme Court of the United States, Lee v. Bickell, *27 292 U.S. 415, 54 S.Ct. 727, 78 L.Ed. 1337. The Supreme Court of the United States modified to some extent the decree of the 3-Judge Court but did not modify or change the above quoted portion of the opinion.
It is next asserted by the appellee and evidently found by the Chancellor below that even if the corporation was liable for the documentary stamp taxes on any of the certificates of stock, the appellants would be equitably estopped from enforcing such collection from the appellee because of the unusual delay, or that the Statute of Limitations would bar the appellants from enforcing the collection of such taxes.
Appellee cites 35 C.J.S., Factors, § 41, p. 435 to the effect that there may be equitable estoppel against the government under special circumstances. The fallacy of the argument of the appellee is the contention that there are no special circumstances shown by this record.
In the case of Daniell v. Sherrill, Fla., 48 So.2d 736, 23 A.L.R.2d 1410, special circumstances were involved in that the state had acquiesced in the possession and improvement of property which it had conveyed over 50 years before and attempted action after the party in possession had made improvements on the property for a period of 50 years.
The case of State ex rel. Landis v. Sovereign Camp, W.O.W., 131 Fla. 867, 180 So. 33, cited by the appellee is not in point. In that case the State Treasurer took the positive action of renewing a fraternal benefit society's license to do business each year for 18 years after premiums had been increased by the amendment of the By-Laws. The Court held under such special circumstances that the State Attorney General was estopped to deny the society's right to increase premiums in quo warranto proceedings in an effort to forfeit the society's franchise.
As we view the authorities with reference to estoppel against the state or the sovereign it requires exceptional or special circumstances and some positive act on the part of some officer of the sovereign. We have no such facts in this case as would justify the application of the doctrine of estoppel against the sovereign.
The Statute of Limitations have also been invoked in this case. Although this suit is maintained in the name of C.M. Gay, as Comptroller of the State of Florida, and Flanders Thompson, as Sheriff of Lee County, the suit is actually against the State of Florida. In the case of Heidt v. Caldwell, as Governor, etc., Fla., 41 So.2d 303, 304, this Court settled the question that the Statute of Limitations did not run against the State of Florida unless there was some particular statute which made it applicable. In that case we said:
"It is next contended if a legal duty or obligation to pay the costs of maintenance at the Florida Hospital exists, then no recovery in the case at bar can be had as the State's claim for compensation was not presented within three years and therefore is barred by the statute of limitations. In the case at bar the State of Florida was the real plaintiff in interest. Section 17 of Article 4 of the Constitution of Florida [F.S.A.] makes the Governor of Florida and the Administrative Officers of the Executive Department the Board of Commissioners of State Institutions. In the case of Florida Industrial Commission v. Felda Lumber Co., 154 Fla. 507, 18 So.2d 362, we held that a statute of limitations will not be held applicable to claims and demands of the State of Florida unless by the terms of the statute it is made to apply. See Ideal Farms Drainage Dist. v. Certain Lands, 154 Fla. 554, 19 So.2d 234; 53 C.J.S., Limitations of Actions, § 15, page 940; 34 Am.Jur. 300, Sec. 388."
This case has been ably presented. We have carefully considered all of the issues and questions involved.
Reversed for further proceedings in accordance with this opinion.
SEBRING, C.J., and CHAPMAN and ROBERTS, JJ., concur.