715 So.2d 265 (1998)
CITY OF SAFETY HARBOR, Florida, Appellant,
v.
COMMUNICATIONS WORKERS OF AMERICA and Public Employees Relations Commission, Appellees.
No. 96-2573.
District Court of Appeal of Florida, First District.
March 11, 1998.
*266 Charles J. Thomas and Deborah S. Crumbley, of Thompson, Sizemore & Gonzalez, P.A., Tampa, for Appellant.
Carla D. Franklin of Franklin, Donnelly & Gross, Gainesville, for Appellee Communications Workers of America.
Jack E. Ruby, Assistant General Counsel, Tallahassee, for Appellee Public Employees Relations Commission.
KAHN, Judge.
The City of Safety Harbor appeals a final order entered by the Public Employees Relation Commission (PERC) verifying the results of a representation election and certifying the Communications Workers of America (CWA) as the exclusive collective bargaining representative for a bargaining unit that PERC determined was comprised solely of nonprofessional employees. Disregarding the parties' stipulation that "Recreation Leader II" was a professional classification, PERC ordered Recreation Leaders II included in the proposed bargaining unit. Communications Workers of Am. v. City of Safety Harbor, 22 F.P.E.R. ¶ 27125 (1996).
The final order entered by PERC must be reversed and a new election held. This court is not required to defer to PERC's construction of section 447.203(13)(a), Florida Statutes (1995), insofar as PERC has determined that compliance with section 447.203(13)(a)4. is mandatory. An agency's construction of a statute is not entitled to deference where the agency has erroneously interpreted a provision of law. See Pensacola Jr. College v. Public Employees Rels. Comm'n, 400 So.2d 59 (Fla. 1st DCA 1981); Southeast Volusia Hosp. Dist. v. National Union of Hosp. & Health Care Employees, 429 So.2d 1232 (Fla. 5th DCA 1983), appeal dismissed, 452 So.2d 568 (Fla.1984).
Section 447.203(13) provides:
(13) "Professional employee" means:
(a) Any employee engaged in work in any two or more of the following categories:
1. Work predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work;
2. Work involving the consistent exercise of discretion and judgment in its performance;
3. Work of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and
4. Work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education, an apprenticeship, or training in the performance of routine mental or physical processes.
(b) Any employee who:
1. Has completed the course of specialized intellectual instruction and study described in subparagraph 4 of paragraph (a); and
2. Is performing related work under supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).
§ 447.203, Fla. Stat. (1995). The statute denominates a "professional employee" as "any employee engaged in work in any two or more of the following categories:...." The statute then enumerates four categories. The first three are separated by a semicolon, *267 and the third and fourth are separated by a semicolon followed by the conjunction "and."
The Commission, in Florida Police Benevolent Association v. State of Florida, 10 F.P.E.R. ¶ 15228 (1984), found the statutory language defining "professional employee" ambiguous. PERC determined that the fourth category, the so-called "specialized intellectual instruction" category, is a threshold requirement. PERC has since continued to treat the educational element as a threshold requirement. See School Dist. of Leon County v. Leon Educ. Support Personnel Ass'n, 21 F.P.E.R. ¶ 26187 (1995); Government Supervisors Ass'n of Florida v. Metropolitan Dade County, 19 F.P.E.R. ¶ 24184 (1993).
Respectfully, we are unable to agree with PERC's construction of section 447.203(13)(a). The introductory clause of the statute, section 447.203(13)(a), imposes the requirement that a professional employee must be engaged in work "in any two or more" of the following four enumerated categories. The use of the word "any" is completely at odds with PERC's decision to treat the (a)4 criterion as a threshold. Where the language of a statute is clear and unambiguous, the statute must be given its plain and ordinary meaning, and no further review of legislative history is necessary. Aetna Cas. & Sur. Co. v. Huntington Nat'l Bank, 609 So.2d 1315, 1317 (Fla.1992); Streeter v. Sullivan, 509 So.2d 268 (Fla.1987); Holly v. Auld, 450 So.2d 217 (Fla.1984); Suwannee River Water Management Dist. v. Pearson, 697 So.2d 1224, 1226 (Fla. 1st DCA 1997). Based on the plain language in the introduction of the statute, we cannot construe the specialized intellectual instruction language as a threshold requirement.
As noted, PERC traces its present construction of the statute to its opinion in Florida Police Benevolent Association, Inc. v. State. That opinion contains the following statement:
The National Labor Relations Act (NLRA) includes the same four criteria as Florida Statute and requires that the educational requirement be met. See 29 U.S.C.A. § 152(12)(1976) and Express-News Corp. v. San Antonio Typographical Union, 223 NLRB 627 (1976)(Journalists possessing general college degree not professional employees under NLRA). Our examination reveals approximately sixteen states which include a definition of professional employee in their comprehensive collective bargaining statutes.... Each of these definitions includes an educational requirement as a mandatory element.
10 F.P.E.R. ¶ 15228. PERC's reliance on the federal statute and similar statutes of other states is misplaced. Florida's statute, unlike the federal statute, and the other statutes relied upon by PERC, permits employees to qualify as "professional" based on satisfaction of "any two or more" of the four listed criteria. The federal statute[1] and other state laws[2] do not contain this modifying *268 language. The federal statute simply enumerates the four categories and provides that any employee engaged in work satisfying the four categories is a professional employee. Several of the state statutes (California, Connecticut, Hawaii, Kansas, Oregon and Wisconsin) track the federal statute. A majority of the state statutes, however, expressly require a specialized intellectual instruction by using the conjunction "and" and not qualifying the list with language comparable to Florida's "any two or more." Accordingly, we hold that PERC's construction of the statute is erroneous.
Because there has been no suggestion that Safety Harbor's Recreation Leaders II do not meet the first two criteria of section 447.203(13)(a), they fall within the definition of "professional employee" pursuant to section 447.203(13)(a). PERC improperly disregarded the parties' stipulation that "Recreation Leader II" was a professional classification and classified those employees as nonprofessional employees for collective bargaining purposes. Accordingly, we vacate the order verifying the results of the representative election and remand with instructions that PERC require a new election.
REVERSED and REMANDED.
DAVIS and BENTON, JJ., concur with written opinions.
DAVIS, Judge, concurring.
I concur with the majority that the plain language of this statute requires satisfaction of any two or more of the four listed criteria and does not establish the educational component as a threshold requirement for a determination that an employee is a "professional" employee. I write solely to note the discrepancy this creates between this statute and the accepted legal definition of a "professional" for other purposes. For example, in explaining what careers are considered "professional" for purposes of the professional malpractice statute of limitations, the Florida Supreme Court stated that "a vocation is not a profession if there is any alternative method of admission that omits a required four-year undergraduate degree or a graduate degree." Garden v. Frier, 602 So.2d 1273, 1276 (Fla.1992) (emphasis in original). See also Mizrahi v. Valdes-Fauli, Cobb & Petrey, P.A., 671 So.2d 805, 806 (Fla. 3d DCA 1996).
BENTON, Judge, concurring.
I write separately because in my view the Public Employees Relations Commission (PERC) properly classifies as "professional"or did so until todayonly those employees whose work requires "advanced knowledge in a field of science or learning." Here, however, without the prerequisite votes, four employees who should properly have been classified as professional employees were included in the same bargaining unit with nonprofessional employees. I therefore join the judgment of the court reversing and remanding for further proceedings in which "no unit shall be established or approved for purposes of collective bargaining which includes both professional and nonprofessional employees unless a majority of each group votes for inclusion in such unit." § 447.307(4)(h), Fla. Stat. (1995).

I.
I would leave undisturbed PERC's construction of subsection 447.203(13)(a), Florida Statutes (1995), insofar as PERC determined that compliance with subsubsection 447.203(13)(a)4. is mandatory, if an employment position is to be classified as professional. Our statute requires as much. The National Labor Relations Act and analogous statutes in other states have similarly been construed to limit professional employment to work requiring advanced knowledge. Specialized labor law tribunals are apparently unanimous on the point. "Expert tribunals are entitled to the greatest deference in recognition of their special competence in dealing with labor problems." Pasco County Sch. Bd. v. Florida Public Employees Relations Comm'n, 353 So.2d 108, 116 (Fla. 1st DCA 1977).
The majority's contrary interpretation of a statute PERC administers runs afoul of accepted *269 canons of statutory construction. Consistently since Florida Police Benevolent Association v. State, 10 F.P.E.R. ¶ 15228 (1984), PERC has interpreted subsection 447.203(13)(a), Florida Statutes (1983), to require that a "professional employee" must meet at least one of the three criteria set out in subsubsections 447.203(13)(a)1., 2., and 3., along with the criterion set out in subsubsection 447.203(13)(a)4.
(13) "Professional employee" means:
(a) Any employee engaged in work in any two or more of the following categories:
1. Work predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work;
2. Work involving the consistent exercise of discretion and judgment in its performance;
3. Work of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; and

4. Work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education, an apprenticeship, or training in the performance of routine mental or physical processes.
(b) Any employee who:
1. Has completed the course of specialized intellectual instruction and study described in subparagraph 4 of paragraph (a); and
2. Is performing related work under supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).
§ 447.203, Fla. Stat. (1995)(emphasis supplied). In short, the statute in question defines a "professional employee" as any employee whose work falls within
any two or more of the following categories:
1....;
2....;
3....; and
4....
§ 447.203(13)(a), Fla. Stat. (1995). PERC has construed the statute to mean any two of 1., 2., (or) 3.; and 4. PERC's construction precludes coupling (for example) the criteria set out in subsubsections 447.203(13)(a)2. and 3. in order to classify as professional numerous jobs not now deemed professional. In effect, the majority faults PERC for failing to substitute "or" for "and" after subsubsection 447.203(13)(a)3. But those who drafted the statute used the word "and" instead of the word "or."
The majority's interpretation ignores more than the Legislature's choice of conjunction. In interpreting subsection 447.203(13)(a), Florida Statutes (1995), PERC appropriately looked to the federal statute on which it is modeled, viz., 29 U.S.C. § 152(12)(a)(iv), as that statute has been construed by the National Labor Relations Board and the federal courts. See State v. Jackson, 650 So.2d 24, 27 (Fla.1995)("Because chapter 934 is modeled after a federal statute, we also may look to the federal legislative history as a guide to determine whether monitoring digital display pagers is governed by wiretap provisions."); Department of Legal Affairs v. Rogers, 329 So.2d 257, 263 (Fla.1976)(noting similarities between Federal Trade Commission Act and Florida's "little FTC act"); Gay v. Inter-County Tel. & Tel. Co., 60 So.2d 22, 23 (Fla.1952)(holding Florida "Documentary Stamp Act is similar to the Federal Act 26 U.S.C.A. § 1800, et seq., and therefore takes the same construction"); Department of Prof. Regulation, Div. of Real Estate v. Toledo Realty, Inc., 549 So.2d 715 (Fla. 1st DCA 1989)(construing portion of Florida's Equal Access to Justice Act in conformity with its federal counterpart); Anderson v. Lykes Pasco Packing Co., 503 So.2d 1269 (Fla. 2d DCA 1986)(construing Florida Human Relations Act in keeping with provisions of the Age Discrimination in Employment Act); School Bd. of Leon County v. Hargis, 400 So.2d 103 (Fla. 1st DCA 1981)(discussing looking to Title VII of the Civil Rights Act of 1964 in construing the Florida Human Relations Act). "If a Florida statute is patterned after a federal law, on the same subject, it *270 will take the same construction in the Florida courts as its prototype has been given in the federal courts insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject." Pasco County Sch. Bd., 353 So.2d. at 116.
The National Labor Relations Act, "29 USCS § 152(12) provides that a professional must be engaged in work requiring knowledge of an advanced type customarily acquired through higher education." John F. Gillespie, Annotation, Who are Professional Employees Within Meaning of National Labor Relations Act (29 USCS § 152(12)), 40 A.L.R. Fed. 25, 40 § 6[a] (1978).
Most occupations pass or fail the test of professional status on this requirement.
....
In Western Electric Co. (1960) 126 NLRB 1346, 1960 CCH NLRB ¶ 8704, 45 BNA LRRM 1475, the NLRB rejected a formula devised by an employer which would determine on an individual-by-individual basis whether an employee had met educational and experience requirements to qualify him or her as a professional. The NLRB reiterated that under 29 USCS § 152(12)(a) it is the character of the work, and not individual qualifications, which determine whether an employee is a professional.
Id. Not one of the fifteen state statutes the majority has collected eliminates this criterion for professional employees. With today's decision, Florida now apparently stands alone in not requiring that professional employees "must be engaged in work requiring knowledge of an advanced type."

II.
If subsection 447.203(13)(a) is construed correctly, it is necessary to reach a question the majority does not address, in order to decide whether PERC correctly construed subsubsection 447.203(13)(a)4., which, to reiterate, provides:
4. Work requiring advanced knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education, an apprenticeship, or training in the performance of routine mental or physical processes.
(Emphasis supplied.) Properly at issue is whether PERC erred when it interpreted "knowledge in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study in an institution of higher learning" to mean such knowledge "invariably acquired" by such instruction.
No Florida court has held that only employees with specialized formal education may properly be classified as professional. The language of the statute speaks to learning "customarily"but not inevitablyacquired by formal education. The National Labor Relations Act has expressly been construed not to require that every professional employee have a professional degree. See, e.g., NLRB v. Springfield Hosp., 899 F.2d 1305, 1314 (2d Cir.1990) (collecting cases in which professional status was held not to depend on each employee's holding a professional degree). PERC's interpretation lacks a basis in the text of the statute, and is at odds with practice under the National Labor Relations Act. No deference is owed where PERC "has erroneously interpreted a provision of law." § 120.68(7)(d), Fla. Stat. (Supp. 1996). See, e.g., Pensacola Junior College v. Public Employees Relations Comm'n, 400 So.2d 59 (Fla. 1st DCA 1981); School Bd. of Palm Beach County v. Public Employees Relations Comm'n, 374 So.2d 527 (Fla. 1st DCA 1978).
As the National Labor Relations Board explained in Western Electric Co., 126 N.L.R.B. 1346 (1960), the federal statute now codified as 29 U.S.C. § 152(12)(a)(iv) like the Florida provision that controls here, "defines a professional employee in terms of the work he performs," not in terms of any particular individual's qualifications. Id. at 1348. The Board examines educational background only "for the purpose of deciding whether the work of the group satisfies the `knowledge of an advanced type' requirement." Id. at 1348-1349. "If a group of employees consists primarily of individuals with professional degrees, the Board may presume that the work requires `knowledge *271 of an advanced type.'" Avco Corp., 313 N.L.R.B. 1357 (1994). See Express-News Corp., 223 N.L.R.B. 627 (1976), citing Western Electric, 126 N.L.R.B. at 1349 ("If ... a group of employees is predominantly composed of individuals possessing a degree in the field to which the profession is devoted, it may logically be presumed that the work requires `knowledge of an advanced type.'"). But see St. John's Gen. Hosp. of Allegheny-ADR Ctr. v. NLRB, 825 F.2d 740, 745 (3rd Cir.1987)(limiting presumption to the converse). See also Springfield Hosp., 899 F.2d at 1314 (citing Express-News for the proposition that "`professional' status may be based upon prolonged experience").
An employee who performs work that requires knowledge customarily acquired by a prolonged course of specialized instruction and study in an institution of higher learningor a hospital, see Communications Workers of Am v. Bay Med. Ctr., 16 F.P.E.R. ¶ 21161 (1990)(holding two years' specialized training in a hospital qualified certain technologists and others as professionals)is properly classified as a professional employee for purposes of deciding how voting on bargaining units should proceed, even if that particular employee acquired her advanced knowledge by other means.
Employees' holding college degrees in the field in which they work is an important indicium that advanced knowledge of the kind required under these statutes is needed for their work.
[I]t is the character of the work, and not individual qualifications, which determine whether an employee is a professional.
Where individuals do work normally attributable to a professional, the lack of such formal education as a college degree will not prevent the classification of such employees as professionals, held the NLRB in Robbins & Myers, Inc. (1963) 144 NLRB 295, 1963 CCH NLRB ¶ 12564, 54 BNA LRRM 1047.
29 USCS § 152(12)(a)(iv) specifically distinguishes knowledge acquired from a general education from that required for professional work, said the NLRB in Express-News Corp. (1976) 223 NLRB 627, 40 ALR Fed 1975-76 CCH NLRB ¶ 16710, 91 BNA LRRM 1489. In the view of the NLRB, a general college education does not satisfy the statutory standards enunciated therein. While the NLRB did not suggest that 29 USCS § 152(12) mandates that "knowledge of an advanced type" be acquired by all professionals in a unit through training in an institution of higher learning, it did hold that this advanced knowledge must be customarily received by a prolonged course of a specialized intellectual instruction and study in an institution of higher learning.
John F. Gillespie, Annotation, Who are Professional Employees Within Meaning of National Labor Relations Act (29 USCS § 152(12)), 40 A.L.R. Fed. 25, 40 (1978). The annotation continues:
In Westinghouse Electric Corp. (1956) 116 NLRB 1545, 39 BNA LRRM 1039, the NLRB noted that where a group of employees includes a substantial majority of employees who are college graduates and some who hold master's degrees in scientific fields, minor variances in the degree of training in the general professional group, as where some of the employees in the group do not have college degrees, are insufficient to destroy the essentially professional character of the group as a whole.
While 29 USCS § 152(12) requires professionals to possess "knowledge of an advanced type," the NLRB stated in Ryan Aeronautical Co. (1961) 132 NLRB 1160, 1961 CCH NLRB ¶ 10273, 48 BNA LRRM 1502, that such knowledge need not come through academic training alone. The NLRB reiterated its policy that as to engineers, it is not the individual qualifications of each engineer, but rather the character of the work required of them as a group, which is determinative of professional status. While the background of the individual is of course relevant, and is examined for the purpose of deciding whether the work of the group satisfies the "knowledge of an advanced type" requirement, when it appears that a group of employees within a classification is predominantly composed of individuals possessing a degree in the field to which the profession is devoted, it may be presumed that the work requires *272 knowledge of an advanced type, said the NLRB.
In Chrysler Corp. (1965) 154 NLRB 352, 1965 CCH NLRB ¶ 9611, 59 BNA LRRM 1747, the NLRB noted that it is clear that the statutory definition of professionals in 29 USCS § 152(12) does not limit professional status to employees who have received a degree from, or completed a prolonged c[our]se of specialized study in, an institution of higher learning. It noted that the requisite knowledge may also be acquired through training or experience. Consequently, when a group of employees are being evaluated to determine whether they are professionals, the principal test depends not so much on the individual qualifications of each employee as on the predominant character of the work in which they are engaged, said the NLRB.
A group of employees designated as mental health clinicians were held to be professional employees in Malcom X Center for Mental Health, Inc. (1976) 222 NLRB 944, 1975-76 CCH NLRB ¶ 16650, 91 BNA LRRM 1352, despite the fact that the group included, along with trained medical personnel, persons without bachelor's or associate degrees. The NLRB viewed as controlling in this case the fact that all of the mental health clinicians constantly exercised discretion and judgment in the treatment of patients, and accepted the parties' stipulation that all of the employees were professionals.
Id. at 41-42. The view that no job any person without a specialized degree could conceivably hold should ever be classified for labor law purposes as professionaleven when the affected parties stipulate to the professional classificationfinds no support outside PERC's own decisions.

III.
The City of Safety Harbor hired as recreation leaders II Kerri Cardielio, who holds a bachelor's degree in leisure services from Florida State University; Andrea Peters, who holds a bachelor's degree in recreation management from Indiana State University; Timothy Sattinger, who holds a bachelor's degree in recreation, leisure management from Southern Illinois University; and Patrick Wojdan, who holds a bachelor's degree in political science from Pennsylvania State University.
In the course of PERC proceedings on CWA's representation-certification petition, CWA and the City stipulated to certain facts, including:
All persons except Woj[d]an, held degrees within the specialized field of recreation or leisure services. The jobs they fill involve the performance of work of a predomina[nt]ly intellectual nature requiring the consistent exercise of discretion and judgment.
There has been no suggestion that Safety Harbor's recreation leaders II do not meet both the subsubsection 447.203(13)(a)1. and 2. criteria. The record is clear that they do. In a recommended order, a PERC hearing officer made the following findings of fact:
14. Kerr[i] Cardielio, Andrea Peters, Timothy Sattinger, and Patrick Wojdan are employed as Recreation Leader IIis (RL). This is an entry level position. Leisure Services is a specialized "educational type" field. Kerr[i] Cardielio, Andrea Peters, and Timothy Sattinger hold Bachelor's degrees in a leisure service related field. Patrick Wojdan holds a degree in Political Science.
15. RLs can be certified as Leisure Professionals, but certification is not a job requirement. In order to maintain the certification, an individual is required to take twenty hours of course related work or seminars, every two years. Some of the City's RLs are certified.
16. The minimum qualifications for an RL position are:
Bachelor's degree in recreation, leisure services, or related field; supplemented by two years of work experience supervising recreational activities or related programs; or an equivalent combination of training and experience which provides the required knowledge, ability, and skills. Must have valid Florida driver's license. Must be able to work flexible hours. Knowledge of community needs and resources for leisure activities. *273 Knowledge of a variety of recreational activities and equipment. Knowledge of the rules and regulations governing the play of a variety of recreational games. Ability to responsibly oversee the use of a recreational facility. Ability to establish and maintain effective and courteous relationships with the public. Ability to be creative in the development of programs. Ability to communicate clearly and effectively both orally and in writing.
17. RLs must be able to develop, design, organize, promote, and direct recreational activities, such as games, sports, boating, dancing, arts and crafts, nature activities, camping, music, tournaments, socials, classes, exhibits, special events, or other related activities. RLs must also be able to respond to inquiries whether in person, by telephone, or by written correspondence. Additionally, they must be able to explain department policies and procedures, give information regarding programs and collect various fees.
18. RLs must maintain records, prepare reports, and assist in developing promotional and public relations material and information. RLs are also required to maintain the recreational facilities and equipment, open and secure the facilities for events, ensure the proper care and use of the equipment, enforce rules and regulations of proper facility use, and maintain orderliness of recreational areas. They provide instruction and conduct recreational and sports activities for the public.
19. An RL may be called upon to plan and execute a seasonal activity, such as a July 4th celebration under a set budget.
(Exhibit and transcript references omitted.) After setting out numbered findings of fact, the hearing officer's recommended order contained an "analysis" section in which she accepted the parties' stipulation "that the classifications of Accountant, Associate Planner, Computer Specialist, Librarian, and Recycling Coordinator are appropriate for exclusion from the proposed bargaining unit because they are professional employees." See generally Manatee County v. Florida Public Employees Relations Comm'n, 387 So.2d 446, 451 (Fla. 1st DCA 1980)(quoting Hillsborough County Aviation Auth. v. International Bhd. of Painters and Allied Trades, Dist. Council 66, 2 F.P.E.R. 54 (1976), where PERC said, "We have long held that this Commission will not reject agreements or stipulations entered by the parties unless the agreements or stipulations are repugnant to the language or policies of the act."). But the hearing officer rejected the stipulation insofar as it related to recreation personnel:
In addition to the above positions, the parties have stipulated that the classifications of Recreation Supervisor and RL are professional classifications. However, I am not bound by these stipulations if the record does not support the stipulations. Here, the record demonstrates that the RLs must have a Bachelor's degree in recreation, leisure services, or related field, work experience, or an equivalent combination of education and experience. Because they can substitute experience for education, RLs are not required to have a prolonged course of specialized intellectual instruction and study in an institution of higher learning. Thus, no degree or no specialized degree is required as a minimum qualification for the RL position. See Government Supervisors Association of Florida v. Metropolitan Dade County, 19 FPER ¶ 24184 (1993). Thus, this position is appropriately included in the unit.
Adopting the hearing officer's recommended order, PERC refused to classify the recreation supervisor or recreation leaders II as "professional" on the basis of its earlier decisions in Florida Police Benevolent Association v. State, 10 F.P.E.R. ¶ 15228 (1984), and Florida Public Employees Council 79 v. City of Sarasota, 15 F.P.E.R. ¶ 20104 (1989), although the recreation supervisor was deemed managerial or supervisory.
In City of Sarasota, 15 F.P.E.R. at 233, PERC rejected the contention that recreation leaders Sarasota employed were professional employees, relying on the mistaken notion that experience can never "substitute for a degree," saying:
A review of the record indicates that experience may be substituted for a degree and *274 that one [of only two] employee[s] in this position does not have a degree. Accordingly, the position of Recreation Leader is not a professional employee under § 447.203(13), Florida Statutes (1987). See Florida Police Benevolent Association, Inc. v. State of Florida, 10 FPER ¶ 15228 (1984).
Here three of the four employees Safety Harbor hired as recreation leaders hold four-year degrees in their field. The fourth also holds a four-year degree, although in a different field. According to uncontroverted testimony, all four "use the type of knowledge that would customarily be obtained at an institution of higher education," and some combination of experience and training is a job prerequisite.
Because three of the four recreation leaders Safety Harbor employed hold four-year degrees in a leisure services related field, the group is "predominantly composed" of individuals with a specialized degree. Uncontroverted evidence established that their work required advanced knowledge "customarily acquired" by prolonged, specialized instruction at a university. If the minimum qualifications for Recreation Leader II had been simply "[b]achelor's degree in recreation, leisure services, or a related field; supplemented by two years of work experience supervising recreational activities or related programs," there could be no question about the proper classification. Addition of the words "or an equivalent combination of training and experience which provides the required knowledge, abilities, and skills" (emphasis supplied) does not alter the nature of the work the recreation leaders perform for the City of Safety Harbor. The statutory test set out in subsubsection 447.203(13)(a)4., Florida Statutes (1995), was met on this record.

IV.
I concur in remanding with directions that another election be conducted in conformity with section 447.307(4)(h), Florida Statutes (1995). In the last election, city employees voted twenty-eight to sixteen in favor of CWA as their bargaining representative, and PERC found in its Verification of Election Results and Certification of Exclusive Collective Bargaining Representative that three votes challenged on other grounds were too few to affect the outcome of the election. Here CWA argues against a second election on grounds that a difference of another four votes could not alter the outcome, either.
But every vote involved was cast under a different set of assumptions concerning the composition of the bargaining unit, assumptions based on the ruling we now reverse. While we do not know if the difference in assumptions led to different votes, we are constrained by precedent to remand for another election. See Southeast Volusia Hosp. Dist. v. National Union of Hosp. and Health Care Employees, 429 So.2d 1232 (Fla. 5th DCA 1983), case dismissed by Public Employees Relations Comm'n v. Southeast Volusia Hosp. Dist., 452 So.2d 568 (Fla.1984).
NOTES
[1] The federal statute, 29 U.S.C.A. 152(12)(1996), provides:

(12) The term "professional employee" means
(a) any employee engaged in work (i) predominantly intellectual and varied in character as opposed to routine mental, manual, mechanical, or physical work; (ii) involving the consistent exercise of discretion and judgment in its performance; (iii) of such a character that the output produced or the result accomplished cannot be standardized in relation to a given period of time; (iv) requiring knowledge of an advanced type in a field of science or learning customarily acquired by prolonged course of specialized intellectual instruction and study in an institution of higher learning or a hospital, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes; or
(b) any employee who (i) has completed the courses of specialized intellectual instruction and study described in clause (iv) of paragraph (a), and (ii) is performing related work under the supervision of a professional person to qualify himself to become a professional employee as defined in paragraph (a).
[2] See Cal. Gov't Code § 3521.5 (West 1997); Conn. Gen.Stat. Ann. § 5-270(C) (West 1997); Haw.Rev.Stat. Ann. § 89-2 (Michie 1989); 5 Ill. Comp. Stat. 315/3(m) (West 1997); Iowa Code Ann. § 20.3(9)(1997); Kan. Stat. Ann. § 75-4322(d)(1996); Me.Rev.Stat. Ann. tit. 26 § 962(5)(West 1996); Mass. Gen. Laws Ann., ch. 150E, § 1 (West 1997); Minn.Stat. Ann. § 179A.03(13)(1997); N.H.Rev.Stat. Ann. § 273-A:1(VIII)(1995); N.M. Stat. Ann. § 10-7D-4(O)(Michie 1997); Ohio Rev.Code Ann. § 4117.01(J)(Banks-Baldwin 1997); Or.Rev.Stat. § 663.005(7)(1996); 43 Pa. Cons.Stat. Ann. § 1101.301(7)(West 1970); Wis. Stat. Ann. § 111.81(15)(West 1997).